UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INSTITUTE FOR ENERGY RESEARCH,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL ENERGY REGULATORY<br>COMMISSION,<br><br>    Defendant. | Civil Action No. 22-cv-3420 (BAH) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

FITHAWI BERHANE
Assistant United States Attorney

*Attorneys for the United States of America*

**TABLE OF CONTENTS**

Introduction ................................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 1

LEGAL STANDARDS ................................................................................................... 1

    A.    Motion for Summary Judgment Under Rule 56 ............................................ 1

    B.    Summary Judgment in the FOIA Context Generally ..................................... 2

ARGUMENT .................................................................................................................. 4

    I.    FERC Conducted an Adequate Search ......................................................... 4

    A.    Standards for an Adequate Search ................................................................. 4

    B.    The Search in This Case Was Legally Sufficient .......................................... 5

    II.    FERC Properly Applied FOIA Exemptions to Withhold Limited Records ..................... 7

    A.    Exemption 5 ................................................................................................... 7

    B.    Exemption 6 ................................................................................................. 13

    III.    FERC Properly Produced All Segregable Records ...................................... 18

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Abtew v. Dep't of Homeland Sec.*,
808 F.3d 895 (D.C. Cir. 2015) ..................................................................................... 9

*Advancement Project v. Dep't of Homeland Sec.*,
Civ. A. No. 19-52 (RC), 2022 WL 4094061, (D.D.C. Sept. 7, 2022) ....................................... 12

*Agrama v. IRS*,
282 F. Supp. 3d 264 (D.D.C. 2017) .................................................................................. 18

*Am. Fed'n of Gov't Employees, Local 812 v. Broad. Bd. of Governors*,
711 F.Supp.2d 139 (D.D.C. 2010) .................................................................................. 14

*American Oversight, Inc. v. Dep't of Health & Human Servs.*,
2022 WL 1719001 (D.D.C. May 27, 2022) .......................................................... 10, 11, 12, 13

*Amiri v. Nat'l Sci. Found.*,
Civ. A. No. 20-2006 (TNM), 2021 WL 4438910, (D.D.C. Sept. 28, 2021) ........................... 15

*Anderson* v. *Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................... 1

*Beck v. Dep't of Just.*,
997 F.2d 1489 (D.C. Cir. 1993) ................................................................................ 14, 15

*Boyd v. Crim. Div. of U.S. Dep't of Just.*,
475 F.3d 381 (D.C. Cir. 2007) ......................................................................................... 18

*Brown v. Dep't Just.*,
724 F.Supp.2d 126 (D.D.C. 2010) ...................................................................................... 5

*Canaday v. USCIS*,
545 F.Supp.2d 113 (D.D.C. 2008) ..................................................................................... 15

*Chang v. Dep't of Navy*,
314 F.Supp.2d 35 (D.D.C. 2004) ...................................................................................... 14

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
746 F.3d 1082 (D.C. Cir. 2014) .......................................................................................... 3

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ....................................................................................... 8, 9

*DeBrew v. Atwood*,
No. 12-5361, 2015 WL 3949421 (D.C. Circ. 2015) ................................................................ 2

*Defenders of Wildlife v. U.S. Border Patrol*,
623 F. Supp.2d 83 (D.D.C. 2009) ....................................................................................... 4

*Dep't of Def. v. Fed. Labor Relations Auth.*,
510 U.S. 487 (1994) ...................................................................................................... 14

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ..................................................................................................... 8, 10

*Dep't of Just. v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989) ...................................................................................................... 14

*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) ...................................................................................................... 13

*Founding Church of Scientology v. NSA*,
610 F.2d 824 (D.C. Cir. 1979) ........................................................................................... 5

*Gov't Accountability Project v. Dep't of State,*
  699 F.Supp.2d 97, (D.D.C. 2010) ............................................................................. 13, 14
*Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.,*
  Civ. A. No. 21-1968 (TNM), 2022 WL 17356879, (D.D.C. 2022) ................................... 7
*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,*
  445 U.S. 375 (1980) ........................................................................................................... 7
*In re Sealed Case,*
  121 F.3d 729 (D.C. Cir. 1997) ........................................................................................... 9
*Judicial Watch, Inc. v. Dep't of Def.,*
  No. 19-1384 (DLF), 2021 WL 270503 (D.D.C. 2021) ................................................. 3, 4
*Judicial Watch, Inc. v. FDA,*
  449 F.3d 141 (D.C. Cir. 2006) .................................................................................... 14, 16
*Kowalczyk v. Dep't of Just.,*
  73 F.3d 386 (D.C. Cir. 1996) ............................................................................................. 4
*Leadership Conference on Rights v. Gonzales,*
  404 F.Supp.2d 246 (D.D.C. 2005) ..................................................................................... 7
*Lepelletier v. Fed. Deposit Ins. Corp.,*
  164 F.3d 37, (D.C. Cir. 1999) .......................................................................................... 13
*Machado Amadis v. Dep't of State,*
  971 F.3d 364 (D.C. Cir. 2020) ........................................................................................... 3
*Mapother v. Dep't of Justice,*
  3 F.3d 1533 (D.C. Cir. 1993) ........................................................................................... 10
*Marks v. Dep't of Just.,*
  578 F.2d 261, (9th Cir. 1978) ............................................................................................. 4
*Marshall v. FBI,*
  No. 10–871, 2011 WL 3497801, (D.D.C. 2011) .............................................................. 16
*Mead Data Cent., Inc. v. U.S. Dep't of Air Force,*
  566 F.2d 242 (D.C. Cir. 1977) ......................................................................................... 18
*Meeropol v. Meese,*
  790 F.2d 942 (D.C. Cir. 1986) ........................................................................................... 2
*Milton v. Dep't of Just.,*
  783 F.Supp.2d 55 (D.D.C. 2011) ..................................................................................... 17
*Moore v. Bush,*
  601 F.Supp.2d 6, (D.D.C. 2009) ........................................................................................ 7
*Nat'l Ass'n of Criminal Def. Lawyers v. Exec. Office for U.S. Attorneys,*
  844 F.3d 246 (D.C. Cir. 2016) ........................................................................................... 8
*Nat'l Ass'n of Retired. Fed. Employees v. Horner,*
  879 F.2d 873 (D.C. Cir. 1989) ......................................................................................... 15
*NRLB v. Sears, Roebuck & Co.,*
  421 U.S. 132 (1975) ........................................................................................................... 8
*Oglesby v. Dep't of the Army,*
  920 F.2d 57 (D.C. Cir. 1990) ............................................................................................. 2
*People for the Amer. Way Found. v. Nat'l Park Serv.,*
  503 F.Supp.2d 284, (D.D.C. 2007) .................................................................................. 16
*Perry v. Block,*
  684 F.2d 121, 127 (D.C. Cir. 1982) ................................................................................... 2

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) ........................................................................ 9
*Public Citizen, Inc. v. Office of Mgmt. & Budget*,
  598 F.3d 865 (D.C. Cir. 2009) .......................................................................... 8
*Renegotiation Bd. v. Grumman Aircraft*,
  421 U.S. 168 (1975) ......................................................................................... 9
*Russell v. Dep't of Air Force*,
  682 F.2d 1045 (D.C. Cir. 1982) ................................................................. 10, 12
*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ..................................................................... 3, 5
*Schrecker v. Dep't of Just.*,
  349 F.3d 657 (D.C. Cir. 2003) .......................................................................... 5
*Senate of Commonwealth of P.R. v. Dep't of Just.*,
  823 F.2d 574 (D.C. Cir. 1987) .......................................................................... 9
*Steinberg v. Dep't of Just.*,
  23 F.3d 548 (D.C. Cir. 1994) ............................................................................ 5
*Summers v. Dep't of Just.*,
  140 F.3d 1077 (D.C. Cir. 1998) ...................................................................... 18
*Truitt v. Dep't of State*,
  897 F.2d 540 (D.C. Cir. 1990) .......................................................................... 4
*Ullah v. CIA*,
  435 F. Supp. 3d 177 (D.D.C. 2020) .................................................................. 2
*United Am. Fin., Inc. v. Potter*,
  667 F.Supp.2d 49 (D.D.C. 2009) .................................................................... 16
*Valencia-Lucena v. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) .......................................................................... 4
*Vaughn v. Rosen*,
  523 F.2d 1136 (D.C. Cir. 1975) ........................................................................ 9
*Weisberg v. U.S. Dep't of Justice*,
  705 F.2d 1344 (D.C. Cir. 1983) ................................................................ 2, 4, 5
*WP Co. LLC v. Small Bus. Admin.*,
  575 F.Supp.3d 114 (D.D.C. 2021) .................................................................. 15

**Statutes**
5 U.S.C. § 552(a)(8)(A)(i)(I) ................................................................................ 3
5 U.S.C. § 552(b) ................................................................................................. 3

**Rules**
Fed. R. Civ. P. 56(a) ............................................................................................ 1

## INTRODUCTION

This case arises from Freedom of Information Act ("FOIA") requests that Plaintiff, Institute for Energy Research made to Defendant, Federal Energy Regulatory Commission ("Defendant" or "FERC"). Plaintiff is contesting: (1) the adequacy of FERC's search for records responsive to Plaintiff's FOIA requests; and (2) the propriety of FERC's assertion of FOIA Exemptions 5 and 6 as a basis for withholding certain information in the responsive records produced to Plaintiff. FERC has made all reasonable efforts to search for and provide all reasonably segregable records responsive to Plaintiff's FOIA requests and has withheld only that information that is properly exempt from release under FOIA. As explained herein, and in the attached statement of facts, the Declaration of Carolyn Templeton ("FERC Declaration"), and FERC *Vaughn* index, there is no genuine dispute of material fact and FERC is entitled to judgment as a matter of law.

## FACTUAL BACKGROUND

FERC hereby incorporates its attached Statement of Material Facts Not in Dispute; the FERC Declaration, and the exhibits attached thereto; and the *Vaughn* index, which is Ex. A to the FERC declaration.

## LEGAL STANDARDS

### I.      Motion for Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure ("Rule") 56, a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

## II.    <u>Summary Judgment in the FOIA Context Generally</u>

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Ullah v. CIA*, 435 F. Supp. 3d 177, 181 (D.D.C. 2020) (internal quotation marks omitted).

An agency is entitled to summary judgment regarding its search if the agency has conducted a search "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). The adequacy of an agency's search does not turn on whether the requested information is found, but instead is measured by a "standard of reasonableness." *Weisberg*, 705 F.2d at 1351.  That is, the agency must show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The agency must explain the "scope and method of the search" in "reasonable detail[,]" but need not provide "meticulous documentation [of] the details of an epic search."  *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). "At the summary judgment stage, . . . the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see DeBrew v. Atwood,* No. 12-5361 (June 30, 2015).  An agency's affidavits describing its FOIA searches are afforded "substantial weight" (*see, e.g., Meeropol v. Meese*, 790 F.2d 942, 954 (D.C. Cir. 1986)) and "a presumption of good faith, which cannot be

2

rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Moreover, "[t]o withhold a responsive record, an agency must show both that the record falls within a FOIA exemption, 5 U.S.C. § 552(b), and that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption,' *id.* § 552(a)(8)(A)(i)(I)." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). "The agency may carry [the burden of establishing that a claimed exemption applies] by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). "Agency affidavits sometimes take the form of a '*Vaughn* index,' but there is 'no fixed rule' establishing what such an affidavit must look like[.]" *Id.* (citation omitted).

Finally, "FOIA provides that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'" *Machado Amadis*, 971 F.3d at 371 (quoting 5 U.S.C. § 552(b)). "[The D.C. Circuit has] held that district courts cannot approve withholding exempt documents 'without making an express finding on segregability.'" *Id.* "An agency may satisfy [its segregability] obligation by '(1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material.'" *Judicial Watch, Inc. v. Dep't of Def.*, Civ. A. No. 19-1384 (DLF), 2021 WL 270503, at *6 (D.D.C. Jan. 27, 2021). "The segregability requirement does not apply to non-exempt

3

material that is 'inextricably intertwined' with exempt material, and agencies are entitled to a presumption that they disclosed all reasonably segregable material[.]" *Id.* (citation omitted).

**ARGUMENT**

### I.     FERC Conducted an Adequate Search

#### A.     Standards for an Adequate Search

An agency moving for summary judgment in a FOIA case must first demonstrate that it made a good faith effort to search for responsive materials in a manner "reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Where agency affidavits assert that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Safecard Servs.*, 926 F.2d at 1200. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in one place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does the FOIA require that an agency search every record system. *Oglesby*, 920 F.2d at 68.

"To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The process of conducting an adequate search for documents requires "both

4

systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micromanage the executive branch." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

Specifically, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" for summary judgment in the agency's favor to be inappropriate based on the adequacy of the search. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 370 (D.C. Cir. 1980) (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979)). A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't Just.*, 724 F.Supp.2d 126, 129 (D.D.C. 2010) (quoting *SafeCard Servs.*, 926 F.2d at 1200); *accord Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) (a plaintiff's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them").

### B.    The Search in This Case Was Legally Sufficient

Here, there is no genuine dispute that the search performed was adequate. As explained in the FERC Declaration, FERC used IT experts to conduct the search for calendars from the specified individuals in response to FOIA Request FY22-57. FERC Decl. ¶ 9. These IT experts "searched [FERC's] records to produce responsive calendars available in Microsoft Outlook for the individuals named in the FOIA request." *Id*. Both Chairman Glick and Commissioner Clements's offices each utilize one standard Microsoft Outlook calendar for their offices. *Id*. Individuals within the office can input information into the calendars and external entities may also send invitations that appear on the Commissioners' calendars. *Id*. FERC confirmed with both

5

offices that there were no other calendars maintained that would be responsive to the Plaintiff's request. *Id*.

Applying the standards governing searches, FERC's search for calendar records responsive to FOIA Request FY22-57 was plainly reasonable and legally sufficient. FERC searched the places it reasonably determined were most likely to yield responsive records and applied lessons learned in response to prior requests by Plaintiff to proactively ensure that no portions of the relevant calendar entries were omitted. *Id*. ¶ 23.

FERC's search for cell phone billing records was also legally sufficient and designed to capture all responsive materials. Upon receipt of FOIA Request FY22-58, it was directed to FERC's Office of the Chief Information Officer and the Contracting Officer Representative of FERC's Verizon Wireless account to conduct a search. *Id*. ¶ 25. That office maintains monthly records of cellular phone invoices for official agency cell phones and has a standard process for complying with records requests. *Id*. The process is to: "(a) Identify the individuals that are named in the FOIA request; (b) Determine if the individuals have FERC issued cellular phones; (c) Identify the time periods required for the records on the FOIA request; (d) Pull the required records based on required dates from the FERC network; (e) If record is missing, request record from Verizon; (f) Pull each detailed phone record for each named individual for the time period required; and (g) Send files to CIO FOIA contact for distribution." *Id*. ¶ 25(a-g). This process was followed in response to Request FY2022-58. *Id*. ¶ 26. At step 2, it was determined that only three of the four individuals named in Plaintiff's FOIA request had agency-issued cell phones. *Id*. ¶ 24. That office located those cell phone bills which were in the agency's possession at the time and requested any which were not from Verizon, ultimately locating all responsive cell phone records.

## II.    FERC Properly Applied FOIA Exemptions to Withhold Limited Records

As explained below, and as detailed in the declaration and the *Vaughn* index, FERC properly relied on FOIA Exemptions 5 and 6 to withhold a very limited amount of information in response to Plaintiff's request.

Under FOIA, federal courts have jurisdiction to compel the production of agency records only where those records have been "improperly withheld." 5 U.S.C. § 552(a)(4)(B); *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 384 (1980). "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F.Supp.2d 6, 12 (D.D.C. 2009). When the withholding of material responsive to a FOIA request is at issue, the government agency has the burden of showing that the material withheld falls within a FOIA statutory exemption to disclosure. *See Leadership Conf. on Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). A court may grant summary judgment based solely on information in an agency's declarations if they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either evidence in the record nor by evidence of agency bad faith." *Casey*, 656 F.2d at 738 (. After asserting exemptions, an agency must release "[a]ny reasonably segregable portion of a record" and provide it to the requesting party "after deletion of the portions which are exempt." 5 U.S.C. § 552(b).

### A.    Exemption 5

FERC properly applied FOIA Exemption 5 to withhold portions of various calendar entries. Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

To apply FOIA Exemption 5, agencies must first satisfy the threshold requirement—i.e., show that the information protected was "inter-agency or intra-agency." *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, Civ. A. No. 21-1968 (TNM), 2022 WL 17356879, at *6 (D.D.C. Dec. 1, 2022). As it pertains to the portions of the documents withheld pursuant to FOIA Exemption 5 in this case, the inter-agency and/or intra-agency character of the portions is readily apparent on their face.

One well-recognized civil discovery privilege that provides for protection under Exemption 5 is the deliberative process privilege. *See Nat'l Ass'n of Criminal Def. Lawyers v. Exec. Off. for U.S. Attorneys*, 844 F.3d 246, 249 (D.C. Cir. 2016) (the "exemption allows the government to withhold records from FOIA disclosure under at least three privileges" including "the deliberative-process privilege"); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). That privilege—and in turn Exemption 5—protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).

The need for protection "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8-9 (citations omitted) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism").

It is well established that documents and information are protected from disclosure under the deliberative process privilege if they are "'predecisional' and 'deliberative.'" *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2009). "Both requirements stem from the privilege's 'ultimate purpose, [which] . . . is to prevent injury to the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citing *Sears, Roebuck & Co.*, 421 U.S. at 151 (alterations in original)). Ultimately the standard to determine whether a document is both predecisional and deliberative is "whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States*, 617 F.2d at 866.

First, the withheld information is predecisional. "A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). A document is deemed "'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates.'" *Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *Senate of Commonwealth of P.R. v. Dep't of Just.*, 823 F.2d 574, 585 (D.C. Cir. 1987)). The withheld calendar information pertains to meetings and discussions among FERC Commissioners with agency staff concerning how to proceed on certain matters pending before the Commission or prospective policy decisions. Although the redactions do not reflect the outcome of the agency decisions themselves or detail the actions taken or to be taken, the redactions reflect meetings and topics of discussion among FERC's Commissioners with agency staff on pending matters before the agency. FERC Decl. ¶ 32; FERC *Vaughn* Index at 1.

9

Second, the withheld records are deliberative. A document is "deliberative" if it is "a part of the agency give-and-take . . . by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). In essence, this means that "the communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive*, 752 F.3d at 463 (citing *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

Significantly for the context of calendar entries relating to meetings in which agency deliberations took place, the deliberative process privilege "serves to protect the deliberative process itself, not merely documents containing deliberative material." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Intrusion into the process itself is the harm to be avoided. While most commonly this protects deliberative remarks or comments, it also protects agency staff from having the combination of timing and the subject matters of certain internal meetings picked apart to reveal aspects of how agency deliberations took place. *See Am. Oversight, Inc. v. Dep't of Health & Human Servs.*, Civ. A. No. 17-0827, 2022 WL 1719001, at *18 (D.D.C. May 27, 2022).

FERC correctly redacted parts of specific calendar entries that reflect deliberations or are part of the decision-making process. FERC Decl. ¶ 31; FERC *Vaughn* Index at 1. Disclosure of such information would expose and harm the deliberative process, which Exemption 5 is intended to protect. *See, e.g.*, *Klamath Water Users Protective Ass'n*, 532 U.S. at 8-9 ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government") (internal citations and quotation marks omitted); *Sears Roebuck & Co.*, 421 U.S. at 153-54.

10

This Court's decision in *American Oversight*, 2022 WL 1719001, at *18, is instructive as to how this court should view calendar entry redactions. In that case, the requester sought "[a]ll calendar entries for the Secretary, any political or SES appointees in the Secretary's office, and the Acting Assistant Secretary for Legislation, or anyone maintaining calendars on behalf of these individuals, relating to health care reform." *Id.* at *2. Among other things, the plaintiff asserted that "OMB improperly redacted portions of the titles of meetings on several calendar entries." *Id.* at *18. This Court ruled in favor of the defendant, finding that a "topic of discussion can itself disclose sensitive issues" and that use of Exemption 5 was appropriate as "where the titles or body of a calendar entry would themselves disclose details of agency deliberations, it could certainly chill future government employees from engaging in frank discussions, both by discouraging meetings on sensitive topics, or from describing those topics in any calendar entries (and thereby preventing advance preparation)." *Id.* (internal quotations omitted).

Here, FERC's redactions are similar to those made in *American Oversight*. FERC specifically chose to withhold from disclosure the titles of entries because they are pre-decisional, deliberative, and there is a foreseeable harm in releasing them. For example, numerous calendar entries reference policy proposals. FERC Decl. ¶¶ 30-31. A policy proposal is clearly pre-decisional, as the policy is definitionally a matter under consideration, and is not yet final. In fact, some of the policy proposals were never adopted, further supporting the argument that they were predecisional. *Id.* ¶ 31.

Moreover, the discussions and other work referenced in the calendar entries reflect the deliberative nature of such conferrals and work, as the work was being conducted at the indicated times because a decision had not yet been reached concerning the subject matter. *Id.* Further, that certain proposals were never adopted, in combination with the timing and the subject matters of

11

particular internal meetings that would be revealed by an unredacted release of an entire calendar entry, would reveal aspects of the Commission's internal deliberations, and would also create public confusion that follows from disclosure of policies considered but ultimately not adopted by the government. *Id.*; *see also Am. Oversight*, 2022 WL 1719001, at \*18 ("The topic of discussion can itself disclose sensitive issues, and contrary to Plaintiff's argument, may include recommendations or express opinions."); *Russell*, 682 F.2d at 1048 (permitting withholding of draft manuscript because release could lead to "confusion of the public").

Lastly, there are further clear, foreseeable harms that would result from releasing the information in the calendar entries. The deliberative process privilege protects agencies "from being 'forced to operate in a fishbowl.'" *Advancement Project v. Dep't of Homeland Sec.*, Civ. A. No. 19-52 (RC), 2022 WL 4094061, at \*3 (D.D.C. Sept. 7, 2022) (citation omitted). It recognizes "that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* Here, it is undeniable that the disclosure of calendar entries would create a disincentive for FERC employees to maintain detailed, substantive calendar entries that are necessary to enabling leaders at large, complex organizations to prepare for and address the many discrete issues that they confront each day. *See Am. Oversight*, 2022 WL 1719001, at \*18. If FERC staff did not have as detailed and substantive calendars, they would not be as adequately prepared for future meetings, *id.*, which in turn would harm the decision-making process. FERC Decl. ¶ 32. A lack of such preparation would significantly inhibit both the day-to-day operations of the agency, as well as its ultimate ability to make appropriately considered and deliberated decisions to benefit the public and accomplish the agency's mission. *See Am. Oversight*, 2022 WL 1719001, at \*18; FERC Decl. ¶ 32. To prevent this foreseeable harm from occurring, FERC properly redacted the titles of the calendar entries under Exemption 5.

12

Finally, Plaintiff incorrectly appears to assume that most entries pertain to meetings with entities outside FERC, such as the White House.[1] Contrary to this assumption, the vast majority of entries are internal meetings involving only FERC staff that relate to pending FERC proceedings or consultations with other federal agencies. FERC Decl. ¶ 33.

B.    **Exemption 6**

FOIA Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't Accountability Project v. Dep't of State*, 699 F.Supp.2d 97, 105-06 (D.D.C. 2010). In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F.Supp.2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA

---

[1]    As Plaintiff states on its website, it believes secret White House interference in FERC's operations to be the reason behind all of FERC's withholdings and redactions as well as the cause of any delays in complying with its many FOIA requests. INSTITUTE FOR ENERGY RESEARCH, FERC TRANSPARENCY PROJECT, https://www.instituteforenergyresearch.org/type/ferc/ (last visited Mar. 22, 2023) ("One major contributor to these delays, as acknowledged by a Department of Justice lawyer to IER's attorneys, is FERC's coordination with the White House on how to respond. . . . Until recently, FERC was historically and even admirably timely and responsive about FOIA requests. This new posture from FERC, however, suggests either a change in policy under the leadership of Chairman Glick or that FERC (or possibly the White House) has no interest in being transparent").

balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original); *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

Here, FERC properly invoked FOIA Exemption 6 to protect personal information in records responsive to FOIA Request FY2022-57. FERC redacted portions of entries that include personal information (such as childrens' piano recitals, gym appointments, days children have off school, goodbye parties for coworkers, and weddings), passcodes, the contact information of private citizens, and the names of lower-level staff. FERC Decl. ¶ 36; FERC *Vaughn* Index at 1-3. Releasing this information would go against Congress' intent to protect individual privacy under FOIA Exemption 6. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (explaining FOIA Exemption 6's applicability to "bits of personal information, such as names and addresses, the release of which could create a palpable threat to privacy").

In contrast, Plaintiff cannot identify a public interest that would be served by the disclosure of this information. *See Am. Fed'n of Gov't Emps. v. Broad. Bd. of Governors*, 711 F. Supp. 2d 139, 156 (D.D.C. 2010) (upholding redaction of names and other information relating to another individual pursuant to Exemption 6); *Gov't. Accountability Project v. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010) (concluding that agency properly redacted personal email addresses of applicants for board positions because "releasing their email addresses serves no public interest because these email addresses would not reveal 'what the government is up to'"). Indeed, courts

14

have held that "[w]hile there may be some public interest in obtaining the identifying information of the Federal employees at issue, disclosure would not shed any light on the workings of [an agency]." *Canaday v. U.S. Citizenship & Immigr. Servs.*, 545 F. Supp. 2d 113, 118 (D.D.C. 2008).

Because there is no countervailing public interest that can overcome the privacy interest of these individuals, FERC properly redacted this private information pursuant to Exemption 6. *See Beck v. Dep't of Just.*, 997 F.3d 1489, 1494 (D.C. Cir. 1993) (when there is no public interest at all, the court "'need not linger over the balance; something outweighs nothing every time'") (quoting *Nat'l Ass'n of Retired. Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

Further, the foreseeable harm in releasing this information—for example, personal information (such as kids' activities, visits from family, birthdays), the names and identities of candidates for jobs, passcodes, the contact information of private citizens, and the names of lower-level staff—is readily apparent on its face. "[A] court may find the foreseeable-harm requirement satisfied if 'the very context and purpose of' the withheld material 'make[s] the foreseeability of harm manifest.'" *Amiri v. Nat'l Sci. Found.*, Civ. A. No. 20-2006 (TNM), 2021 WL 4438910, at *13 (D.D.C. Sept. 28, 2021), *aff'd*, No. 21-5241, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022); *cf. WP Co. LLC v. SBA*, 575 F. Supp. 3d 114, 121 (D.D.C. Dec. 13, 2021) (affirming withholding of social security numbers under Exemption 6, and observing that "it is not difficult to note how people would be injured by the release of their SSNs").

FERC also appropriately withheld phone numbers of unknown individuals from production in its response to FOIA Request FY22-58. It is settled in this District that FOIA does not obligate the release of phone numbers belonging to unknown persons simply because they appear in government records, including phone bills. As Plaintiff observes in its complaint, FOIA Exemption 6's protection of personal privacy extends to "'personnel-file'-type information," Compl. ¶ 22,

which this Court has interpreted to include the phone numbers of unknown individuals. *See United Am. Fin., Inc. v. Potter*, 667 F.Supp.2d 49, 65–66 (D.D.C. 2009) ("Balancing the privacy interest of this unknown individual against the public interest in disclosure, the Court finds that requiring release of this person's name and cell phone number would be a "clearly unwarranted invasion of personal privacy" under Exemption 6, and hence withholding this information is proper.") (footnote omitted). Exemption 6 is by no means limited to personnel files themselves or the information they contain. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (explaining Exemption 6 applicability to "bits of personal information, such as names and addresses, the release of which could create a palpable threat to privacy.").   There is generally "a stronger case to be made for the applicability of Exemption 6 to phone numbers." *People for the Amer. Way Found. v. Nat'l Park Serv.,* 503 F.Supp.2d 284, 306–07 (D.D.C. 2007). Disclosure of these numbers could subject the individuals to "annoyance, embarrassment, and harassment in the conduct of their official and private lives." *See Marshall v. FBI,* No. 10–871, 2011 WL 3497801, at \*6 (D.D.C. Aug. 10, 2011).

This Court has adjudicated virtually identical disputes to this one before, and every time it has decided in favor of individual privacy of private citizens even in the face of strong public interests in disclosure such as uncovering potential government corruption. The most illustrative example is from *Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. Dep't of Lab.*, in which a nonprofit organization filed a FOIA request seeking, *inter alia*, phone records of senior agency staff based on "its suspicion that ties between labor organizations and the Department's current leadership have improperly influenced the course of [agency] policy." 828 F.Supp.2d 183, 186 (D.D.C. 2011). Similarly, Plaintiff has sought in this and at least nine other lawsuits before this Court to uncover "the role that the White House or outside groups have played in the formulation

16

of policy and other decisions made at what is legally an 'independent commission'." INSTITUTE FOR ENERGY RESEARCH, FERC TRANSPARENCY PROJECT, https://www.instituteforenergyresearch.org/type/ferc/ (last visited Mar. 22, 2023). This case and *National Right to Work* involve the same types of records: "Verizon invoices for the cell phones" of senior agency officials. 828 F. Supp. 2d at 192. In both cases "[t]he only information in these records that could be converted into identifying information (presumably by tracing) are phone numbers; the names of individuals or entities associated with those numbers are not contained in the records." *Id*. The only difference in the two cases is that the Department of Labor in *National Right to Work* redacted all phone numbers on the invoices, whereas in this case FERC only redacted those numbers it was unable to determine the owner of and released those numbers where it determined no individual's privacy interest was at stake. *Id*. ("The Department redacted from these records the phone numbers associated with Ms. Solis and Ms. Greenfield as well as the phone numbers of all other individuals and entities.").

This Court in *National Right to Work* rejected an argument that intrusions into unknown individuals' privacy was *de minimis* when weighed against "the public interest in learning of any undue influence on the government." *Id*. (internal citations omitted). It reasoned that while there is a legitimate public interest in "ferreting out undue influence on the government," there was no reason to believe that that rarefied interest would be furthered by disclosing the list of phone numbers. *Id*. (citing *Milton v. Dep't of Just.*, 783 F.Supp.2d 55, 58 (D.D.C. 2011) (requester bears burden of articulating a significant public interest and also that disclosure would advance that interest)). While the numbers dialed to or from the agency officials' phones likely "include organizations and entities with whom [those officials] regularly deal in their professional capacities," they also include "a host of other private persons," public disclosure of which "would

result in a concrete invasion of privacy that outweighs the asserted public interest in this case, making the invasion unwarranted." *Id.* at 192-93. As in that case, if Plaintiff wished to know whether agency officials corresponded by phone with particular persons or groups, "it could have limited its requests to specific telephone numbers associated with those entities. But it did not do so." *Id.* at 193.

### III.    FERC Properly Produced All Segregable Records

While an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonably segregable portions' of responsive records that do not contain exempt information.'" *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2017); see 5 U.S.C. § 552(b) (requiring "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt"). Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Before approving the application of a FOIA exemption, district courts must make specific findings of segregability regarding the documents to be withheld. *Summers v. Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Boyd v. Crim. Div.*, 475 F.3d 381, 391 (D.C. Cir. 2007).

Here, FERC carefully reviewed the responsive records on a line-by-line and page-by-page basis to identify reasonably segregable, non-exempt information. FERC Decl. ¶ 41. FERC determined that all information withheld either was exempt from disclosure or was so intertwined with protected material that segregation was not possible without revealing the underlying protected material. *Id*. ¶ 42. FERC produced all the segregable, non-exempt information in the requested records. *Id*.

18

## **CONCLUSION**

For the reasons set forth above, FERC respectfully requests that this Court grant summary

judgment in favor of FERC as to all claims in this case.


Date:  March 31, 2023                                    Respectfully submitted,
       Washington, DC

                                                         MATTHEW M. GRAVES, D.C. Bar #481052
                                                         United States Attorney

                                                         BRIAN P. HUDAK
                                                         Chief, Civil Division

                                                         By:    /s/ *Fithawi Berhane*
                                                                FITHAWI BERHANE
                                                                Assistant United States Attorney
                                                                601 D Street, N.W.
                                                                Washington, D.C. 20530
                                                                (202) 252-6653
                                                                Fithawi.Berhane@usdoj.gov

                                                         Attorneys for the United States of America

19