UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INSTITUTE FOR ENERGY RESEARCH,

 Plaintiff,

 v.

FEDERAL ENERGY REGULATORY
COMMISSION,

 Defendant.

Civil Action No. 22-cv-3420 (BAH)

## <u>DECLARATION OF CAROLYN TEMPLETON</u>

I, Carolyn Templeton, declare as follows:

1. I am the Director of Strategic Operations & Special Projects in the Office of External Affairs ("OEA") of the Federal Energy Regulatory Commission ("FERC" or "Commission"). I declare that the following statements are true and correct to the best of my knowledge and belief and that they are based upon my personal knowledge and on information supplied to me by employees under my supervision and employees in other FERC offices.

2. FERC is an independent agency that regulates the interstate transmission of electricity, natural gas, and oil. FERC also reviews proposals to build liquefied natural gas terminals and interstate natural gas pipelines as well as licensing hydropower projects. FERC is headquartered in Washington, D.C., and is under the direction of Acting Chairman Willie Phillips.

3. I have served as the Director of Strategic Operations & Special Projects since December 18, 2022. OEA serves as FERC's primary contact point with the Congress, the public, international, Federal, state, and local government offices, and the news media. OEA is also responsible for developing public relations and other outreach strategies for FERC. In addition to these responsibilities, OEA also oversees the processing of Freedom of Information Act ("FOIA")

requests and Critical Energy Infrastructure Information (CEII) requests, pursuant to 18 C.F.R. § 388.113.

4.    In fiscal year 2022, the Commission received 103 FOIA requests. The FOIA requests processed by FERC are often complex and may include large volumes of records, highly technical and scientific records, records from multiple geographic areas, cross-cutting programmatic issues, inter-agency coordination issues, and involve a variety of FOIA exemptions. To provide the greatest amount of disclosure, FERC employs three full-time employees that work to process FOIA requests and generally follows a "first-in, first-out" policy when responding to FOIA requests. General and Administrative Law in the Office of General Counsel (OGC) assists in the processing of FOIA requests by reviewing the requests and assessing the legal basis for application of exemptions to responsive records.

5.    My statements in this declaration are based on information provided to me by employees under my supervision, information provided by FERC staff in other offices, and information obtained by me in performance of my official duties. I am familiar with the Plaintiff's FOIA requests. This declaration will explain the steps taken to process Plaintiff's FOIA requests and provide an explanation of FERC's decision to withhold certain information responsive to the request.

6.    In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), FERC is submitting this declaration to provide the Court and Plaintiff with the procedures used to search for, review, and process the responsive records and FERC's justification for withholding information in part pursuant to FOIA Exemptions (b)(5) and (b)(6). FERC located two calendars and three cell phone bills responsive to the Plaintiff's FOIA requests. One calendar was for former Chairman Richard Glick and the other calendar was for Commissioner Allison Clements. One cell

phone billing record each was located and produced for former Chairman Glick, Commissioner Clements, and Sarah Venuto. An index of withholdings and redactions is attached as Exhibit A.

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUESTS

7.      By letter dated June 13, 2022, the Plaintiff filed a FOIA request seeking copies of all calendars: "(1) kept by FERC Commissioner and Chairman Richard Glick, for the period April 19, 2022 through June 10, 2022; (2) kept for FERC Commissioner and Chairman Richard Glick, by his Chief of Staff Pamela Quinlan, for the period April 19, 2022 through June 10, 2022; (3) kept by Commissioner Allison Clements, for the period April 19, 2022 through June 10, 2022; and (4) kept for FERC Commissioner Allison Clements, by her assistant Alexander de Taboada, for the period April 19, 2022 through June 10, 2022."

8.      On June 13, 2022, OEA staff sent an e-mail to Mr. Pyle acknowledging receipt of this request and providing the tracking number, FY22-57. OEA staff then initiated the processing of the request and initiated the search for the following offices: (1) Office of Chairman Richard Glick, and (2) Office of Commissioner Allison Clements.

9.      Information Technology (IT) staff within the Commission produced the calendars for the named individuals within the specified date ranges.  IT searched the Commission's records to produce responsive calendars available in Microsoft Outlook for the individuals named in the FOIA request. FERC staff also confirmed that Chairman Glick and Commissioner Clements utilize one standard Microsoft Outlook calendar and that no other calendars exist. It is my understanding that staff within each Commissioner's office have the ability to input information into their calendars, and their calendars may also reflect invitations by other FERC staff or external sources. Therefore, two documents, one calendar for Chairman Glick and one for Commissioner Clements, were initially located in response to this request.

3

10.     By letter dated July 13, 2022, Secretary Kimberly Bose sent the Plaintiff a letter indicating that the timeframe to respond to the Plaintiff's request had been extended to July 28, 2022.  The additional time was requested to consult with other components of the agency having substantial subject-matter interest therein.

11.     By letter dated July 28, 2022, OEA Director Sarah Venuto responded to the Plaintiff's request releasing two documents, a Microsoft outlook calendar for Chairman Glick and a Microsoft outlook calendar for Commissioner Clements that were responsive to the request. Both calendars contained redactions pursuant to FOIA Exemptions 5 and 6.

12.     By letter dated August 9, 2022, the Plaintiff filed an appeal concerning the July 28, 2022, determination letter.

13.     On September 7, 2022, in response to Plaintiff's appeal, General Counsel Matthew Christiansen upheld the application of FOIA Exemptions 5 and 6, confirming that the search for records in response to this FOIA request was sufficient, and rejecting the argument that FERC was not in compliance with 44 U.S.C. § 3105.

14.     On September 12, 2022, the Plaintiff filed a complaint concerning this FOIA request and request FY22-58.

15.     By letter received on June 14, 2022, Plaintiff filed a FOIA request seeking copies of all bills for or covering mobile phones/devices issued to the following individuals for the stated periods or other records reflecting inbound and outbound calls made and received: FERC Commissioner and Chairman Richard Glick, for or covering the period November 8, 2020 through June 14, 2022; FERC Commissioner Allison Clements, for or covering the period December 8, 2020 through June 14, 2022; Sarah Venuto, of FERC's Office of External Affairs, for or covering

4

the period April 1, 2021 through June 14, 2022; and Elin Katz, Director of FERC's Office of Public Participation, for or covering the period October 1, 2021 through June 14, 2022.

16. On June 14, 2022, OEA staff sent an e-mail to Mr. Pyle acknowledging receipt of this request and providing the tracking number, FY22-58.

17. On July 28, 2022, OEA Deputy Director Benjamin Williams sent a response letter to Plaintiff, informing Plaintiff that an initial search for records had identified a large number of potentially responsive records and enclosed three responsive documents with redactions pursuant to FOIA Exemption 6. 5 U.S.C. §§ 552(b)(6).

18. On August 9, 2022, Plaintiff filed an administrative appeal on the interim production, contesting those redactions.

19. On September 7, 2022, FERC General Counsel Matthew Christiansen denied Plaintiff's appeal and informed Plaintiff that a second and final production of the responsive phone bills would be made.

20. On November 8, 2022, the remaining responsive records to request FY22-58 were delivered to Plaintiff with portions redacted pursuant to Exemption 6.

21. On March 1, 2023, it was discovered by FERC staff in preparation of the *Vaughn* Index for this matter that Enclosure 3 to the November 8, 2022 final production was inadvertently omitted, and a duplicate of another enclosure attached in its place. That final enclosure, containing call logs for Sarah Venuto, was delivered to Plaintiff by email on March 7, 2023.

## ADEQUACY OF THE SEARCH

22. OGC confirmed that only one official calendar is kept for former Chairman Glick and one for Commissioner Clements. OGC staff reached out to both offices to confirm this fact both during the initial processing of the request and again during the appeal process. I have

confirmed with staff for former Chairman Glick and Commissioner Clements that there are therefore no other calendars that would be responsive to the Plaintiff's request.

23. In responding to a prior FOIA request and appeal by Plaintiff for certain calendars of Commissioners Glick and Clements, FERC staff discovered that on days with many calendar entries, some entries were omitted because they did not fit within the space allotted in the table and were replaced by the phrase "more items…" Based on this experience, FERC staff provided a separate printout for each of the days containing the phrase "more items" on the calendar in making its production in response to FOIA Request FY22-57. These additional documents include all the entries for that day and were contained within the document labeled "Enclosure 2" to the first production.

24. In conducting the search for records responsive to FOIA Request FY22-58, seeking cell phone bills for four named individuals, only three of them, former Chairman Glick, Commissioner Clements, and Sarah Venuto, were found to have agency issued cell phones.

25. Upon receipt of FOIA Request FY22-58, it was directed to the FERC Office of the Chief Information Officer (CIO) and the Contracting Officer Representative (COR) of the Verizon Wireless Account to conduct a search. The CIO maintains a monthly record of the cellular phone invoices for official agency cell phones. Their process for responding to FOIA requests involves seven steps:

    a.   Identify the individuals that are named in the FOIA request;

    b.   Determine if the individuals have FERC issued cellular phones;

    c.   Identify the time periods required for the records on the FOIA request;

    d.   Pull the required records based on required dates from the FERC network;

    e.   If record is missing, request record from Verizon;

> f.  Pull each detailed phone record for each named individual for the time period required; and
>
> g.  Send files to CIO FOIA contact for distribution.

26.     This process was followed in response to Request FY22-58, and located all of the cell phone bills responsive to Plaintiff's FOIA request, which were provided as detailed in ¶¶ 17-20, *supra*.

27.     Ultimately, FERC searched all locations under its control that were likely to yield records responsive to Plaintiff's FOIA Requests FY22-57 and FY22-58.

**EXEMPTION 5 – PRIVILEGED INFORMATION**

28.     FOIA Exemption 5 exempts from disclosure inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. 5 U.S.C. § 552(b)(5). Non-exempt portions of records covered by Exemption 5, including purely factual information the disclosure of which would not have an impact on the deliberative process or another interest protected by Exemption 5, were segregated from exempt information that was withheld in part.

29.     FOIA Exemption 5 has been construed to exempt documents or information normally privileged in the civil discovery context, and incorporates the attorney work product, attorney-client, and deliberative process privileges. The deliberative process privilege protects pre-decisional, deliberative communications that are part of a process by which agency decisions are made. It protects opinions, advice, evaluations, deliberations, proposals, or recommendations that form part of an agency decision-making process, as well as the selection and sorting of factual information relied upon as part of the decision-making process.

30.     In order to apply FOIA Exemption 5, agencies must first satisfy the threshold requirement – i.e., show that the information protected was "inter-agency or intra-agency." As it

pertains to the portions of the documents withheld pursuant to FOIA Exemption 5 in this case, the inter-agency and/or intra-agency character of the portions is readily apparent on their face because the redactions cover information about internal meetings of FERC staff or meetings between FERC staff and staff of other federal agencies.

31.    FERC asserted FOIA Exemption 5 to protect privileged deliberative material contained in the calendars. The deliberative process privilege protects the internal deliberations of the government by exempting from release recommendations, analyses, speculation and other non-factual information prepared in anticipation of agency decision-making. The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions. Thus, material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld. Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision.

32.    The portions of the calendars redacted under FOIA Exemption 5 reflect deliberations on matters pending before the Commission. FERC staff have informed me that numerous calendar entries reference policy proposals. A policy proposal is inherently pre-decisional and some of the aforesaid policy proposals were never adopted. Moreover, the discussion and other work referenced in the calendar entries were being conducted at the indicated times because a decision had not yet been reached concerning the subject matter.  A release of an entire calendar entry, reflecting the timing and subject matters of particular internal meetings, would reveal internal deliberations. This could create public confusion that follows from disclosure of policies considered but ultimately not adopted by the government.

33.     In addition, the disclosure of calendar entries would create a disincentive in the future for FERC employees to maintain detailed and substantive calendar entries that are necessary to enable leaders at large complex organizations to prepare for and address the many discrete issues they confront each day.  If FERC staff did not have as detailed and substantive calendars, they would not be as adequately prepared for future meetings, which would harm decision-making. A lack of such preparation would significantly inhibit both the day-to-day operations of the agency, as well as its ability to make appropriately considered and deliberated decisions to benefit the public and accomplish the agency's mission.

34.     I have reviewed the calendar entries that were withheld either in full or in part from the Plaintiff pursuant to FOIA Exemption 5.  The vast majority of entries are internal meetings involving only Commission staff and their efforts to resolve matters before the Commission. Many of the meetings with other Federal government agencies have been released to the Plaintiff and very few of the remaining items withheld pursuant to FOIA Exemption 5 are meetings with other Federal government agencies. Meetings with the White House or external organizations were not withheld under Exemption 5.

## EXEMPTION 6 – PERSONAL INFORMATION

35.     FOIA Exemption 6 exempts from disclosure certain files whose release would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6).

36.     FOIA Exemption 6 has been utilized to protect personally sensitive information such as the names, phone numbers, and personal information of private citizens.

37.     Portions of the redacted entries from calendars responsive to Request FY22-57 include personal information (such as children's piano recitals, gym appointments, days children have off school, goodbye parties for coworkers, and weddings), passcodes, the contact information

of private citizens, and the names of lower-level staff. Portions of these calendar entries were therefore redacted pursuant to FOIA Exemption 6 to prevent foreseeable harm in that disclosure of this information could invite unwanted intrusions and result in an unwarranted invasion of personal privacy.

38.     Personal cellular phone numbers, Commission staff's direct phone numbers, and individual account numbers were redacted from materials responsive to Request FY22-58. FERC staff attempted to determine the identity and public availability of all phone numbers appearing in the call logs of the responsive cell phone bills. Where staff could not determine the public availability of the number, it was also redacted pursuant to FOIA Exemption 6.

39.     In reaching the decision to redact this information, FERC considered the applicability of relevant precedent and determined that the legitimate public interest in ferreting out undue influence on the government would not be furthered by the disclosure of the phone numbers of private individuals. The U.S. District Court for Washington, D.C. has specifically upheld the decision by an agency to redact phone numbers within a cell phone bill. See *Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. U.S. Dep't of Lab.*, 828 F. Supp. 2d 183, 192 (D.D.C. 2011) (stating that "[w]hile the Foundation has asserted a legitimate public interest in ferreting out 'undue influence' on the government by outside groups, it is not at all clear that disclosure of these phone numbers would actually advance this rarefied interest in this particular case."); see also *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 306 (D.D.C. 2007). (holding "[g]enerally, there is a stronger case to be made for the applicability of Exemption 6 to phone numbers and addresses.").

40.     The direct lines and cell phone numbers of Commission staff were also redacted due to the risk that this information, if released and posted publicly, would subject them to further

annoyance, threats, embarrassment, and harassment in the conduct of their official and private lives.

## SEGREGABILITY

41.     FERC performed a line-by-line and page-by-page review to identify information exempt from disclosure or for which a discretionary waive of exemption could be applied.

42.     All information not exempted from disclosure pursuant to the FOIA exemptions mentioned above was correctly segregated and non-exempt portions were released.

## CONCLUSION

43.     FERC performed legally adequate and reasonable searches for responsive records; processed all such records and released all reasonably segregable non-exempt information from documents responsive to Plaintiff's FOIA request. Information was properly withheld pursuant to FOIA Exemptions (5) and (6). FERC carefully examined the documents and determined that the information withheld from Plaintiff in this case, if disclosed would either reveal privileged information or would cause a clearly unwarranted invasion of the personal privacy. After extensive review of the documents at issue, I have determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed this 31st day of March 2023.

_Carolyn R. Templeton_

11

Carolyn Templeton
Director, Strategic Operations & Special Projects
Office of External Affairs
Federal Energy Regulatory Commission