UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INSTITUTE FOR ENERGY RESEARCH,

      Plaintiff,

      v.

FEDERAL ENERGY REGULATORY
COMMISSION,

      Defendant.

Civ. A. No. 22-3420 (BAH)

**REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

FITHAWI BERHANE
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6653
Fithawi.Berhane@usdoj.gov

*Attorneys for the United States of America*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 1

I. FERC Conducted an Adequate and Well-Defined Search and the Declaration Supporting FERC's Search and Exemptions Claimed is Legally Appropriate ........................................... 1

    A. Specific Identification of Agency Employees Who Conducted the Search is Irrelevant And Would Not Shed Further Light on The Search ............................................................. 2

    B. The Declarations of Carolyn Templeton are Not Inadmissible Hearsay. ........................ 3

    C. FERC's *Vaughn* Index and Declarations are Sufficiently Detailed for the Court to Award Summary Judgment ...................................................................................................... 4

II. FERC Appropriately Withheld Information Pursuant to Exemption 5's Deliberative Process Privilege ................................................................................................................. 5

III. FERC Appropriately Withheld Information Pursuant to Exemption 6 ................................. 10

    A. FERC has Asserted Significant Privacy Interests for the Names of Employees, Members of the Public, and Unsuccessful Applicants for Employment. .............................................. 11

    B. FERC Properly Withheld Phone Numbers from Verizon Phone Bills. ........................... 12

CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

Cases

*Abtew v. Dep't of Homeland Sec.*,
  808 F.3d 895 (D.C. Cir. 2015) ............................................................................................... 6

*Advancement Project v. Dep't of Homeland Sec.*, Civ. A.,
  No. 19-0052 (RC), 2022 WL 4094061 (D.D.C. Sept. 7, 2022) ................................................ 9

*Akers v. Beal Bank*,
  845 F. Supp. 2d 238 (D.D.C. 2012) ......................................................................................... 3

*American Oversight, Inc. v. Department of Health & Human Services*, Civ. A.,
  No. 17-827 (EGS), 2022 WL 1719001 (D.D.C. May 27, 2022) ........................................... 8, 9

*Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Review*,
  830 F.3d 667 (D.C. Cir. 2016) ............................................................................................... 10

*Beck v. Dep't of Just.*,
  997 F.2d 1489 (D.C. Cir. 1993) ............................................................................................. 10

*Chelmowski v. United States*, Civ. A.,
  No. 17-1394 (JEB), 2021 WL 3077919 (D.D.C. July 21, 2021) ............................................. 2

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*,
  746 F.3d 1082 (D.C. Cir. 2014) ............................................................................................... 4

*Ctr. for Pub. Integrity v. FEC*,
  332 F. Supp. 3d 174 (D.D. C. 2018) ........................................................................................ 8

*Ecological Rts. Found. v. EPA*,
  541 F. Supp. 3d 34 (D.D.C. 2021) ........................................................................................... 3

*Federation of Professional & Technical Engineers v. Superior Court*,
  64 Cal. Rptr. 3d 693 (Cal. 2007) ........................................................................................... 11

*Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*,
  Civ. A. No. 21-1968 (TNM), 2022 WL 17356879 (D.D.C. Dec. 1, 2022) ............................... 5

*Harrison v. Bureau of Prisons*,
  611 F. Supp. 2d 54 (D.D.C. 2009) ........................................................................................... 2

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C. Cir. 2013) ................................................................................................. 3

*Jud. Watch, Inc. v. FDA*,
  449 F.3d 141 (D.C. Cir. 2006) ............................................................................................... 11

*King v. Dep't of Just.*,
  830 F.2d 210 (D.C. Cir. 1987) ............................................................................................. 4, 5

*Lepelletier v. FDIC*,
  164 F.3d 37 (D.C. Cir. 1999) ................................................................................................. 10

*Londrigan v. FBI*,
  670 F.2d 1164 (D.C. Cir. 1981) ............................................................................................... 3

*Mapother v. Dep't of Just.*,
  3 F.3d 1533 (D.C. Cir. 1993) .............................................................................................. 7, 10

*National West Life Insurance v. United States*,
  512 F. Supp. 454 (N.D. Tex. 1980) ........................................................................................ 11

*Nat'l Sec. Archive v. CIA*,
  752 F.3d 460 (D.C. Cir. 2014) ................................................................................................. 7

*Nat'l Tr. to Work Legal Def. & Educ. Found., Inc. v. Dep't of Lab.*,
  828 F. Supp. 2d 183 (D.D.C. 2011) ................................................................................... 8
*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) .......................................................................................... 2
*Petroleum Info. Corp. v. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) ..................................................................................... 6, 7
*Prison Legal News v. Samuels*,
  787 F.3d 1142 (D.C. Cir. 2015) ........................................................................................ 4
*Renegotiation Bd. v. Grumman Aircraft*,
  421 U.S. 168 (1975) ......................................................................................................... 6
*Reporters Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ......................................................................................... 8, 9
*Russell v. Dep't of the Air Force*,
  682 F.2d 1045 (D.C. Cir. 1982) ........................................................................................ 7
*Senate of Commonwealth of P.R. v. Dep't of Just.*,
  823 F.2d 574 (D.C. Cir. 1987) .......................................................................................... 6
*Vaughn v. Rosen*,
  523 F.2d 1136 (D.C. Cir. 1975) ........................................................................................ 7

    Statutes

5 U.S.C. § 552(b)(5) ............................................................................................................. 5
5 U.S.C. § 552(b)(5)-(6) ....................................................................................................... 1

**INTRODUCTION**

Defendant, the Federal Energy Regulatory Commission ("FERC" or "Defendant") has adequately demonstrated that it conducted an adequate search and properly redacted the information withheld under Exemptions 5 and 6 to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5)-(6). Plaintiff Institute for Energy Research ("Plaintiff") has made technical attacks on the details of FERC's Declaration and *Vaughn* Index but has failed to demonstrate that FERC improperly withheld information under the FOIA. FERC has further elaborated on its search and withholdings in the Second Declaration of Carolyn Templeton, filed along with this memorandum. *See* Second Declaration of Carolyn Templeton ("2d Templeton Decl."). Plaintiff's substantive arguments concerning Exemption 5 are not in conformity with the prior rulings of either this Court or the D.C. Circuit, and thus, no further disclosure of that information is merited. Finally, Plaintiff's arguments against the application of Exemption 6 stem from inapplicable caselaw and seek to invade personal privacy for no valid public purpose. Accordingly, this Court should grant FERC's motion for summary judgment.

**ARGUMENT**

**I.      FERC Conducted an Adequate and Well-Defined Search and the Declaration Supporting the Search and Exemptions Claimed is Legally Appropriate.**

Plaintiff first challenges the adequacy of the search on the grounds that FERC fails to identify the specific individual "or even a group of people" who performed the search and has not adequately demonstrated that no other calendars responsive to Plaintiff's FOIA request exist. Plaintiff further claims that the information in the Declaration is inadmissible hearsay of no probative value. These arguments are not well-grounded or based upon settled precedent in this jurisdiction.

**A.     Specific Identification of Agency Employees Who Conducted the Search is Irrelevant and Does Not Shed Further Light On The Search**

FERC is under no obligation to produce the "meticulous documentation [of] the details of an epic search" demanded by Plaintiff. *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). It has never been a requirement that the names of persons performing a search be revealed because such information does nothing to assist a reviewing court in assessing the validity of the search.  Indeed, one judge in this district has deemed such an argument "frivolous." *Harrison v. Bureau of Prisons*, 611 F. Supp. 2d 54, 65 (D.D.C. 2009) (finding plaintiff's claim that the searches were inadequate "because they do not identify, by individual name, who was conducting the search" "frivolous"); *see also Chelmowski v. United States*, Civ. A. No. 17-1394 (JEB), 2021 WL 3077919, at *7 (D.D.C. July 21, 2021) ("Courts in this District have repeatedly rejected the argument that an agency's FOIA declaration must identify the individuals, by name, who conducted the searches.")

Here, FERC has described with particularity how it determined that no further responsive records existed other than the Outlook calendars produced. Plaintiff makes no argument that any records exist which FERC has not produced, only that FERC owes further detail about its otherwise meritorious search. Plaintiff complains that FERC does not name the person or group of persons who determined no further calendars existed for Commissioner Allison Clements or Former Chairman Richard Glick. *See* Templeton Decl. ¶ 9.  However, FERC explains that the Office of General Counsel conferred with the office of the Commissioner and the former chairman "during the initial processing of the request and again during the appeal process" to reach the determination that no other calendars existed. Templeton Decl. ¶ 22. Further, because FERC had learned in responding to a prior FOIA request from Plaintiff that "on days with many calendar entries, some entries were omitted because they did not fit within the space allotted in the table and were replaced

2

by the phrase 'more items'," FERC ensured that for those dates a full page was provided so that as much information as possible was released. Templeton Decl. ¶ 23.

In sum, the "adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency,* 315 F.3d 311, 315 (D.C. Cir. 2013). Plaintiff does not contest that the methods used by FERC to conduct its search were inappropriate, only that they were not provided names of those performing the search, which is not required.

**B.      The Declarations of Carolyn Templeton are Not Inadmissible Hearsay.**

Rule 56(c)(4)'s personal knowledge requirement "is deemed met by 'an affiant who reviews the business records of the organization that he or she is affiliated with, and who testifies on the basis of information acquired through the performance of his or her official duties,' since that person 'may be deemed competent by the court to testify as to those records.'" *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 47 (D.D.C. 2021) (quoting *Akers v. Beal Bank*, 845 F. Supp. 2d 238, 242 (D.D.C. 2012)). Moreover, a declarant may "testify to his own observations upon review of . . . documents" and to "practices of which he possesses personal knowledge." *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981). "In the FOIA context, application of the general principle that an organization's employee may testify to information personally acquired in the course of their official duties means that an agency employee, whose duties involve the processing of FOIA requests, may provide sworn declarations concerning an agency's search for and production of records responsive to a FOIA request." *Ecological Rts.*, 541 F. Supp. 3d, at 48. Ms. Templeton's declaration plainly complies with these standards.

### C.    FERC's Vaughn Index and Declarations are Sufficiently Detailed for the Court to Award Summary Judgment

The Templeton Declarations also properly support of FERC's invocations of Exemptions 5 and 6 to withhold records. While FERC has more than made a "noble attempt," Opp'n at 7, at assisting the Court and Plaintiff with assessing the validity of claimed exemptions, FERC has prepared a supplemental index of redactions and withholdings to resolve any lingering confusion. *See* 2d Templeton Decl. ¶¶ 5-6 (explaining redactions under Exemption 6 categorically). Even without this further edification, however, Plaintiff misses the overall purpose of an agency's *Vaughn* Index and Declaration in its search for technicalities. As explained in FERC's opening memo, agency affidavits are not necessarily delivered in the form of, or along with, a *Vaughn* Index.  There is "no fixed rule" so long as the requisite information describes the justifications for nondisclosure with sufficient detail. *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

Indeed, it is permissible to group multiple similar redactions in the way that FERC has "when the FOIA litigation process threatens to reveal 'the very information the agency hopes to protect' . . . so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1149–50 (D.C. Cir. 2015) (quoting *CREW*, 746 F.3d, at 1088); *see also King v. Dep't of Just.*, 830 F.2d 210, 224 (D.C. Cir. 1987) (While there is no set form for a *Vaughn* index, the agency should describe the documents with "as much information as possible without thwarting the exemption's purpose."). That approach has been further refined in the Second Templeton Declaration. As FERC has not withheld any records in full, plentiful non-exempt information is available as explained by the declarations and identified in the index to help the Court evaluate the redactions.

Plaintiff's additional argument that it is owed particularized information about the subject matter of each meeting ignores the rule that an agency should describe withheld information with "as much information as possible without thwarting the exemption's purpose." *King*, 830 F.2d at 224. FERC has described the role of the withheld information as representing the timing and topic of agency decision-making without more because describing the actual subject matter of each meeting would be no different than leaving them unredacted. A rule that partially withheld meetings must have their subject matter described with particularity would amount to excluding this information on the agency calendars from the deliberative process privilege entirely.

## II.    FERC Appropriately Withheld Information Pursuant to Exemption 5's Deliberative Process Privilege

Plaintiff contends that FERC's withholding of meeting topics under the deliberative process privilege is impermissible because FERC has not demonstrated that: (1) the information is privileged; (2) even if the topics are privileged that FERC somehow waived this privilege because it discussed the topics with outside parties; and (3) the disclosure would cause harm. Opp'n at 9-20.  However, Plaintiff's arguments are unpersuasive.

The topics were not discussed with outside parties.  FOIA is clear that Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In utilizing Exemption 5, agencies must first satisfy the threshold requirement—i.e., show that the information protected was "inter-agency or intra-agency." *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, Civ. A. No. 21-1968 (TNM), 2022 WL 17356879, at *6 (D.D.C. Dec. 1, 2022).  Plaintiff categorically denies that the Exemption 5 redactions concern inter- or intra-agency information based on a speculative argument that these specific entries concern meetings or discussions with "outside parties" i.e., non-FERC or non-governmental parties.  Opp'n at 10-11. Contrary to

5

Plaintiff's assertion, the calendars clearly reflect that these meetings occurred between FERC commissioners and staff, which makes them an intra-agency matter.  *See* ECF No. 20-2, Ex. 1. Plaintiff's assertion that FERC has to release the information to demonstrate that the withheld meetings and those participating were not with "a powerful lobbyist" or private citizen defies logic and the nature of FOIA's exemptions. Opp'n at 5, 10-11.   Significantly, FERC has released the topics of discussions for meetings with non-FERC parties, including the names of those participants, which was provided to Plaintiff in full. *See e.g.,* Opp'n Ex. 1.  Accordingly, simply saying that FERC officials met with outside officials on those withheld topics and, therefore, waived privilege, does not make it so.  In this regard, Plaintiff should not be rewarded with access to information based on a speculative assertion that is easily dispelled by the very documents it possesses. Therefore, the question turns to whether the redacted portions under Exemption 5 satisfy the deliberative process privilege requirement, e.g., that the record is deliberative and pre-decisional.

Indeed, as demonstrated in Defendant's motion papers, the withheld information in the calendars is pre-decisional. "A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). A document is deemed "'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates.'" *Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *Senate of Commonwealth of P.R. v. Dep't of Just.*, 823 F.2d 574, 585 (D.C. Cir. 1987)). The withheld calendar information pertains to proposed meetings and internal discussions among FERC Commissioners with agency staff concerning how to proceed on certain matters pending before the Commission or prospective

policy decisions. Templeton Decl. ¶ 31. Second, the withheld information is deliberative. A document is "deliberative" if it is "a part of the agency give-and-take . . . by which the decision itself is made." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).  As previously articulated, this means that "the communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) (citing *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

Plaintiff avers that Defendant's reliance on the deliberative process privilege is unavailing because the withheld information "must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Opp'n at 9 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1976)).  However, this argument falls short because the D.C. Circuit has explained that "[t]he deliberative process privilege . . . is essentially concerned with protecting the process by which policy is formulated." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992).  Indeed, the deliberative process privilege is "not merely [for] documents containing deliberative material", but it also "serves to protect the deliberative process *itself*." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (emphasis added).

Setting a meeting on one's calendar concerning potential topics of discussion pending before the Commission is an integral part of the deliberative process and the forerunner of many methods in which agency officials ultimately formulate policy.  While a calendar entry may serve to remind an official or employee of a pending matter, it also is a recommendation of the topics to possibly be discussed, which may set forth the agency's perceived priorities or not. Templeton Decl. ¶ 32. Release of this information would cause confusion to the public as what is perceived to be a priority may not be what is in actuality.  Templeton Decl. ¶ 31.  As the Court noted in

*American Oversight, Inc. v. Department of Health & Human Services*, Civ. A. No. 17-827 (EGS), 2022 WL 1719001, at *18 (D.D.C. May 27, 2022), releasing "the topic of discussion can itself disclose sensitive issue."  *Id.*  Revealing the withheld topics of the calendar entries would undoubtedly intrude on the agency's decision-making process and provide Plaintiff, as well as the public, with a fragmented view of when and why agency discussions are occurring on sensitive matters of significant importance. Templeton Decl. ¶ 33; *see also e.g., Ctr. for Pub. Integrity v. FEC*, 332 F. Supp. 3d 174, 180 (D.D. C. 2018), ("[a] meeting agenda prepared before the meeting is necessarily predecisional and inherently deliberative in that staff are suggesting the topics to be discussed at the meeting.") (citing *Nat'l Tr. to Work Legal Def. & Educ. Found., Inc. v. Dep't of Lab.*, 828 F. Supp. 2d 183, 190-91 (D.D.C. 2011)). The same rationale holds true for disclosing suggested topics of internal meetings sensitive to pending matters before the agency or pertinent to day-to-day operations.  As the calendars reflect, FERC did not seek to withhold all meeting information from Plaintiff. Rather, only those meetings which are reflective of FERC's decision-making process. Templeton Decl. ¶ 34; 2d Templeton Decl. ¶ 6.

Separately, Plaintiff avers that the entries are not a reflection of the "give-and-take" process because setting a meeting between the Chairman or Commissioner and FERC staff cannot be viewed as a recommendation by a subordinate to a superior.  Opp'n at 10.  However, this runs contrary to this Circuit's decision in *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 364 (D.C. Cir. 2021), which held that "[t]here is no such directional precondition to protection under the deliberative process privilege."  *Id.*  Indeed, the court explained that although "Exemption 5 is generally designed to protect subordinates' advice to superiors the focus is whether the withheld record it is part of the give-and-take of the consultative process" and that "when such an internal agency dialogue is underway, communications by both the giver and the

taker can fall within the privilege." *Id.* (internal citations and quotations omitted). Whether Chairman Glick or Commissioner Clements placed the meeting entry on their respective calendars, or their staff did so, is of little value. There can be little doubt that the privilege's protection is similarly applicable as the redactions reflect meetings and potential topics of discussion amongst FERC's Commissioners with agency staff about matters before the agency. Templeton Decl. ¶¶ 31-32. Having a topic entry on a calendar illustrates that the official is engaged in an internal deliberative process on a particular matter within the agency's purview. *Id.* ¶ 32.

Plaintiff also argues that FERC has used bare and conclusory language in its foreseeable harm explanation. *See* Opp'n at 19. FERC, however, has sufficiently demonstrated the foreseeable harms that would result from releasing the information in the calendar entries. *See* Templeton Decl. ¶¶ 32-33. The deliberative process privilege protects agencies "from being 'forced to operate in a fishbowl.'" *Advancement Project v. Dep't of Homeland Sec.*, Civ. A. No. 19-0052 (RC), 2022 WL 4094061, at *3 (D.D.C. Sept. 7, 2022) (citation omitted). The privilege recognizes "that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* It is undeniable that if FERC were required to disclose the calendar entries, this would create a disincentive for FERC officials and staff to maintain detailed calendar entries concerning cases or regulatory issues necessary to facilitate and meet the administrative and operational goals required of a regulatory agency. *See Am. Oversight*, 2022 WL 1719001, at *18; Templeton Decl. ¶ 33. It could also give the public the wrong impression as to agency priority. Templeton Decl. ¶ 32. Subjecting this type of information to public scrutiny—even in instances where the agency determines not to make a decision – would significantly inhibit the day-to-day operations of the agency and would potentially send the wrong message to the public. *See id.* The ability to shield the information concerning internal deliberations goes to the essence

9

of the deliberative process privilege. *Mapother*, 3 F.3d at 1537. FERC has justified its withholding of this information and demonstrated that its disclosure would cause foreseeable harms.

### III.       FERC Appropriately Withheld Information Pursuant to Exemption 6

Plaintiff's interpretation of Exemption 6 discounts the privacy interests of civil servants and private persons to an extent unsupported by law. FERC has clearly explained the interests at stake, and further refined them in the Second Templeton Declaration. *See* Templeton Decl. ¶¶ 35-40; 2d Templeton Decl. ¶ 6-7. There is little, if any, articulable public interest in invading those privacy interests.

Plaintiff has not challenged that the relevant inquiry is balancing an individual's "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). While the privacy interests of individuals can be varied, "[t]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 47 (internal citations omitted). "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (internal citation omitted).

The information already obtained by Plaintiff is replete with factual information about what the government is up to and when, while the marginal information that could be gleaned about government activities by disclosing further minutiae about which particular government employees or private citizens schedule meetings for which FERC commissioners is of scant public value. *See Am. Immigr. Lawyers Ass'n v. Exec. Off. for Immigr. Review*, 830 F.3d 667, 674 (D.C.

Cir. 2016) ("the question is whether, given the information already disclosed by [the agency], the incremental value served by disclosing [the] name outweighs that person's privacy interest"). Thus, as discussed below, the personal information of civil servants and private persons should properly be redacted under Exemption 6.

**A.      FERC has Asserted Significant Privacy Interests for the Names of Employees, Members of the Public, and Unsuccessful Applicants for Employment.**

Instead of presenting a meaningful public interest to weigh, Plaintiff argues that the names of civil servants can never be withheld and that members of the public cannot be withheld because they may be lobbyists secretly meeting with the Commissioners. Opp'n at 21. Second, Plaintiff argues that the names of unsuccessful applicants for agency employment should be disclosed because they may somehow shed light on agency policymaking priorities. It is well-recognized that private citizens and government employees have a privacy interest in their "names and addresses, the release of which could create a palpable threat to privacy." Jud. *Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006).

Plaintiff's legal argument is tethered to caselaw that is largely irrelevant, distinguishable, or which supports FERC's withholdings. For example, Plaintiff ventures outside the well plowed ground of FOIA Exemption 6, reaching for a citation to a state court decision regarding another statute—*International Federation of Professional & Technical Engineers v. Superior Court*, 64 Cal. Rptr. 3d 693 (Cal. 2007), a California Supreme Court decision concerning that state's Public Records Act. This has no bearing on FOIA and the privacy interests FOIA Exemption 6 is designed to protect. Plaintiff continues its struggle to find support for its proposition, resorting to citing an out of district case, *National West Life Insurance v. United States*, 512 F. Supp. 454 (N.D. Tex. 1980). But that case too is inapposite. There plaintiff sought a rote listing of names and duty stations of postal employees. The court in that case contrasted that request with ones for employee

11

information "related to job performance" that "would have caused extreme embarrassment" and would be properly withheld under Exemption 6.

Here, the names withheld are schedulers and assistants who placed the events on the calendars, not the meetings' attendees. *See* 2d Templeton Decl. ¶ 6(a), (c)-(d). And, the names of political, legal, and other special advisers within the Commissioners' offices were not withheld under Exemption 6. *Id.* ¶ 6(d). In arguing that the names of private persons should be revealed, Plaintiff incorrectly assumes that they are "so influential they are meeting with the agency's leaders." Opp'n at 21. This is incorrect and unsupported by the record.

## B.    FERC Properly Withheld Phone Numbers from Verizon Phone Bills.

FERC is under no obligation to release the names or phone numbers of unknown persons, as explained at length in FERC's opening memorandum

Plaintiff is also incorrect in arguing that FERC purposefully withheld the phone numbers of FERC staff. To determine which numbers from those records could be released, FERC conducted a search on Google for each phone number. 2d Templeton Decl. ¶¶ 11-12. Where FERC staff could verify that a number was publicly available through that search, it was released. Any number that could not be verified as public was withheld. *Id.* ¶ 12. Plaintiff's remaining allegations concerning the cell phone practices of various current and former FERC officials are unavailing as FERC did not determine which numbers were FERC-affiliated or otherwise, so long as they appeared in response to a Google search.

**CONCLUSION**

For the reasons set forth above, and those in FERC's moving papers, FERC respectfully

requests that the Court enter summary judgment in FERC's favor.

Date:   June 2, 2023                              Respectfully submitted,
        Washington, DC

                                                 MATTHEW M. GRAVES, D.C. Bar #481052
                                                 United States Attorney

                                                 BRIAN P. HUDAK
                                                 Chief, Civil Division

                                                 By:    /s/ Fithawi Berhane
                                                        FITHAWI BERHANE
                                                        Assistant United States Attorney
                                                        601 D Street, N.W.
                                                        Washington, D.C. 20530
                                                        (202) 252-6653
                                                        Fithawi.Berhane@usdoj.gov

                                                 *Attorneys for the United States of America*