UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INSTITUTE FOR ENERGY RESEARCH,

    Plaintiff,

    v.

FEDERAL ENERGY REGULATORY
COMMISSION,

    Defendant.

Civil Action No. 22-cv-3420 (BAH)

## SECOND DECLARATION OF CAROLYN R. TEMPLETON

I, Carolyn Templeton, declare as follows:

1.    I am the Director of Strategic Operations & Special Projects in the Office of External Affairs ("OEA") of the Federal Energy Regulatory Commission ("FERC" or "Commission").

2.    The statements in this declaration are true and correct to the best of my knowledge and belief and are based upon information acquired by me in the course of performing my duties, information contained in the records of FERC, and information supplied to me by employees under my supervision and employees in other FERC offices.

3.    As is outlined in my first declaration, which is hereby incorporated by reference, FERC is submitting this declaration to provide the Court and Plaintiff with the procedures used to search for, review, and process the responsive records and FERC's justification for withholding information in part pursuant to FOIA Exemptions (b)(5) and (b)(6). The two calendars responsive to Plaintiff's FOIA request FY22-57 are attached as Exhibit A and the three cell phone bills responsive to the Plaintiff's FOIA request FY22-58 are attached as Exhibit B.

4.      The context of redactions made to Exhibits A and B generally indicate the kind of information which was withheld as described in my first declaration. A categorical approach to redactions and withholdings was taken instead of identifying the particular information in each withholding because the creation of an individualized *Vaughn* index would threaten to reveal the very information the agency hopes to protect. I make this declaration to further clarify and assist the Court and the parties in evaluating the appropriateness of those categories of redactions.

**REDACTIONS TO FY22-57: EXHIBIT A**

5.      As described in my first declaration, FERC asserted FOIA Exemption 5 to protect privileged deliberative material contained in the calendars. Specifically, FERC withheld the titles of calendar events which would disclose deliberations on matters pending before the Commission or policy proposals which were not then and may not now be public. A policy proposal is inherently pre-decisional and some of the aforesaid policy proposals were never adopted. Moreover, the discussion and other work referenced in the calendar entries were being conducted at the indicated times because a decision had not yet been reached concerning the subject matter.  A release of an entire calendar entry, reflecting the timing and subject matters of particular internal meetings, would reveal the specific mechanics and timing of internal deliberations.

6.      As described in my first declaration, portions of the redacted entries from calendars responsive to Request FY22-57 include personal information (such as children's piano recitals, gym appointments), passcodes, the contact information of private citizens, and the names of lower-level staff. Portions of these calendar entries were therefore redacted pursuant to FOIA Exemption 6 to prevent foreseeable harm in that disclosure of this information could invite unwanted intrusions and result in an unwarranted invasion of personal privacy. To add specificity to these redactions, the following privacy interests which would be negatively affected by disclosure were weighed against the public interest in disclosure:

a. **Personal and Travel Information**: includes matters of no public interest, relevant only to the personal lives of the records custodians, including family travel arrangements, gym trips, days children have off school, goodbye parties for coworkers, family vacations and other day-to-day activities which the commissioners choose to have on their calendars. Intrusion into this information would involve exposing intimate details of the officials' lives for no public benefit.

b. **Dial-In Numbers and Passcodes**: This information includes the access numbers for private conference lines used by the custodians to convey information among one another in a secure environment. Releasing this information would be of no public value and would compromise the security of conference lines allowing eavesdroppers or "zoombombers," uninvited persons joining a phone call with disruptive intent, to compromise regular meeting lines.[1] One withheld passcode, on the calendar of Richard Glick at May 9, 2022, is to a non-governmental zoom meeting for a class of students at Georgetown Law School, whose privacy interest is similarly threatened by exposure.

c. **Information Concerning Private Citizens**: This information is inextricably intertwined with certain personal events described in subparagraph a, *supra*. Individuals such as personal trainers, family members, babysitters, and other non-FERC persons should not have their identity exposed to the public solely because of a client's public office. It is foreseeable that, should these persons identities be revealed, unscrupulous actors seeking information on members of the

---

[1] *See generally* Taylor Lorenz, *'Zoombombing': When Video Conferences Go Wrong*, N.Y. TIMES (April 7, 2020), https://www.nytimes.com/2020/03/20/style/zoombombing-zoom-trolling.html.

3

Commission may attempt to pressure or harass them into revealing details of their relationships with the custodians.

      d.      **Names of Lower-Level Staff**: FERC has a longstanding policy of withholding the identities of lower-level staff from FOIA productions to avoid their harassment or discussion in the media. Individuals whose identities have been withheld include schedulers, administrative assistants, technical experts, Information Technology experts, and other personnel who interacted with the custodians on an intermittent basis on day-to-day matters. That the name of a scheduler appears after a meeting on a calendar entry does not mean that that person attended that meeting, let alone participated in it substantively, but that they originated the Outlook event invitation that caused it to appear on that calendar. There would be no public benefit to knowing the names of those persons. I am aware that in June 2022, the name of a FERC employee was provided by the Plaintiff to the DAILY CALLER newspaper in connection with a story that outlet published on one of Plaintiff's FOIA requests.[2] I am also aware that Plaintiff has sought the identities of more professionals involved in the response to the FOIA requests underlying this litigation in order to impose what they describe as "accountability" on them in their individual capacity. It is foreseeable that if the identity of lower-level FERC staff were provided in response to this FOIA request those persons' federal employment would become the subject of public speculation about the performance of their public service and they would face unwanted

---

[2] *See* Thomas Catenacci, *Top US Energy Officials Appear To Be Stonewalling FOIA Requests For Secret White House Meetings*, DAILY CALLER (June 17, 2022), https://dailycaller.com/2022/06/17/richard-glick-ferc-pipeline-institute-for-energy-research/.

harassment and calls from reporters and political groups. The identities of political, legal, and other special advisers within the Commissioners' offices have not been so withheld.

7.      Specifically, the following information was withheld on the following dates:

| Glick | Personal Events (including names of attendees/organizers) | 4/21, 5/9, 6/8 |
| | Travel Information | 5/4, 5/16, 5/17 |
| | Phone numbers or passcodes | 4/21, 5/9, 5/19 |
| | Staff names | 4/22, 4/27, 4/28, 4/29, 5/18, 5/20, 5/23, 5/24, 5/25, 5/26, 5/27, 5/31, 6/1, 6/2, 6/6, 6/7, 6/8, 6/9 |
| | Names of interviewees | 5/25, 5/26 |
| Clements | Personal Events (including names of attendees/organizers) | 4/25, 4/26, 4/27, 4/28, 4/29, 4/30, 5/1, 5/2, 5/3, 5/5, 5/6, 5/7, 5/9, 5/10, 5/11, 5/13, 5/14, 5/16, 5/17, 5/18, 5/20, 5/21, 5/23, 5/25, 5/27, 5/28, 5/29, 5/30, 5/31, 6/1, 6/2, 6/3, 6/4, 6/5, 6/6, 6/7, 6/8, 6/9, 6/10, 6/11, 6/12, |
| | Travel Information | 6/6 |
| | Phone numbers or passcodes | 4/21, 5/19 |
| | Staff names | 4/27, 5/17, 5/24 |

8.      In review of the withholdings made in this matter, it was discovered that two withholdings under Exemption 6 were personal lunches with persons having professional interests in Commission policy. Those lunches were of a personal nature, but due to the public interest in knowing who meets with the members of the Commission, those names are now being released. Specifically, on May 5, 2022, Former Chairman Glick had lunch with Elissa Levin, and on April 22, 2022, Commissioner Clements had lunch with Julia Prochnik.

9.      Also as described in my first declaration, the vast majority of entries are internal meetings involving only Commission staff and their efforts to resolve matters before the Commission. Many of the meetings with other Federal government agencies have been released to the Plaintiff and very few of the remaining items withheld pursuant to FOIA Exemption 5 are

meetings with other Federal government agencies. Meetings with the White House or external organizations were not withheld under Exemption 5.

## REDACTIONS TO FY22-58: EXHIBIT B

10.     In my first declaration, I explained that personal cellular phone numbers, Commission staff's direct phone numbers, and individual account numbers were redacted from materials responsive to Request FY22-58, and that FERC staff had attempted to determine the identity and public availability of all phone numbers appearing in the call logs of the responsive cell phone bills.

11.     Because Plaintiff's memorandum of law in opposition to FERC's motion for summary judgment argues that FERC was wrong to withhold "staff phone numbers" from the records released in response to FOIA Request FY22-58, I was asked to clarify the process used to determine which numbers to withhold or release.

12.     After the Verizon phone bills were retrieved by FERC's Office of the Chief Information Officer, a search on Google was conducted by staff from of the Office of General Counsel for each number appearing on those records. Where FERC staff could verify that a phone number was publicly available through that Google search, such as the number for a business, governmental office, or other public entity, it was released. Any number which could not be so verified was withheld. FERC did not withhold the phone numbers of any specific person or persons.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed this 2nd day of June, 2023.

6

_____

Carolyn R. Templeton
Director, Strategic Operations & Special Projects
Office of External Affairs
Federal Energy Regulatory Commission