## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INSTITUTE FOR ENERGY RESEARCH,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL ENERGY REGULATORY<br>COMMISSION,<br><br>    Defendant. | Civil Action No. 22-3420 (BAH)<br><br>Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

Plaintiff Institute for Energy Research, a "non-profit public policy institute" that runs "a transparency initiative seeking public records relating to environmental and energy policy and how policymakers use public resources," Compl. ¶ 3, ECF No. 1, challenges the response of defendant Federal Energy Regulatory Commission ("FERC") to two requests submitted pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for calendars kept by or for two FERC commissioners, and phone bills reflecting inbound and outbound calls made and received by four FERC officials, Compl. ¶¶ 11, 21. Specifically, plaintiff alleges that FERC has not fulfilled its obligation under FOIA "to produce the records responsive to the FOIA requests," Compl. ¶ 46, by inadequately searching for responsive records and improperly withholding information pursuant to Exemptions 5 and 6, Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n") at 1, ECF No. 20.

Pending before the Court is FERC's motion for summary judgment. Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 19; Def.'s Mot., Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem."), ECF No. 19-1; Def.'s Reply Supp. Mot. Summ. J. ("Def.'s Reply"), ECF No. 22. For the reasons set forth below, the motion is granted in part and denied in part. Specifically, FERC is

granted summary judgment with respect to the adequacy of its search and its Exemption 5 redactions, as well as all Exemption 6 redactions, except as to the name of the lobbyist who had lunch with Chairman Glick at 12:30 p.m. on May 5, 2022, which FERC concedes, in a comment bubble, "should definitely not have [been] withheld."  Def.'s Errata Concerning Reply Mem. Supp. Summ. J., Ex. A, at 14, ECF No. 23-1.

## I.    BACKGROUND

Plaintiff's FOIA requests, FERC's responses to the requests, and FERC's supplemental productions during the pendency of this action are briefly described below.

### A.    The FOIA Request for Calendar Records

On June 13, 2022, plaintiff submitted a FOIA request seeking copies of all calendars kept by or for FERC Commissioner and Chairman Richard Glick and Commissioner Allison Clements (the "Commissioners") from April 19, 2022, to June 10, 2022 ("Calendar FOIA Request").  Pl.'s Opp'n, Pl.'s Statement of Material Facts Not in Genuine Dispute ("Pl.'s SMF") ¶¶ 1–2, ECF No. 20-1; *see also* Def.'s Mot., Def.'s Statement of Material Facts Not in Genuine Dispute ("Def.'s SMF") ¶¶ 1–2.  FERC acknowledged receipt of the FOIA request on the same day.  Pl.'s SMF ¶ 3.

FERC then began its search for responsive records.  According to the Director of Strategic Operations and Special Projects in FERC's Office of External Affairs ("OEA"), which oversees the processing of FOIA requests, FERC takes a "first-in, first-out" approach to processing FOIA requests and employs three full-time employees dedicated to processing such requests.  Def.'s Mot., Decl. of Carolyn Templeton ("Templeton Decl.") ¶¶ 3–4, ECF No. 19-3; *see also* Def.'s SMF ¶ 7.  Upon receipt of the Calendar FOIA Request, FERC IT staff searched FERC's filing system and located one Microsoft Outlook calendar for Chairman Glick and one

for Commissioner Clements.  Templeton Decl. ¶ 9.  FERC staff confirmed that the Commissioners each utilize one calendar that their staff "have the ability to input information into" and that "no other calendars exist."  *Id.*  On July 28, 2022, FERC released the two calendars to plaintiff, with redactions to both pursuant to FOIA Exemptions 5 and 6.  *Id.* ¶ 11.

Plaintiff filed a timely administrative appeal, challenging the adequacy of the search and the redactions pursuant to Exemptions 5 and 6, and FERC's General Counsel upheld the adequacy of FERC's search and the application of both exemptions.  *Id.* ¶¶ 12–13.

### B.    The FOIA Request for Call Logs

On June 14, 2022, plaintiff submitted a second FOIA request seeking copies of "all bills for or covering mobile phones/devices issued to" or "other records reflecting inbound and outbound calls made and received" by "the following individuals for the stated periods": Chairman Glick from November 8, 2020, to June 14, 2022; Commissioner Clements from December 8, 2020, to June 14, 2022; Sarah Venuto from FERC's Office of External Affairs from April 1, 2021, to June 14, 2022; and Elin Katz, Director of FERC's Office of Public Participation from October 1, 2021, to June 14, 2022 ("Call Log FOIA Request").  Pl.'s SMF ¶ 5; Def.'s SMF ¶ 5.  FERC acknowledged receipt of the FOIA request on the same day.  Pl.'s SMF ¶ 6.

Upon receipt of the Call Log FOIA Request, FERC's Office of the Chief Information Officer ("CIO") and the Contracting Officer Representative of the Verizon Wireless Account began their search of the responsive records.  Pl.'s SMF ¶ 11; Def.'s SMF ¶ 11.  The CIO "maintains a monthly record of the cellular phone invoices for official agency cell phones" and has established the following process for responding to FOIA requests:

> (a) Identify the individuals that are named in the FOIA request; (b) Determine if the individuals have FERC issued cellular phones; (c) Identify the time periods required for the records on the FOIA request; (d) Pull the required records based on required dates from the FERC network; (e) If record is missing, request record from

Verizon; (f) Pull each detailed phone record for each named individual for the time period required; and (g) Send files to CIO FOIA contact for distribution.

Pl.'s SMF ¶ 12; Def.'s SMF ¶ 12.  As a result of the search, FERC determined that only Chairman Glick, Commissioner Clements, and Director Venuto possessed phones issued by FERC.  Def.'s SMF ¶ 13.

On July 28, 2022, FERC made a first production to plaintiff of three responsive records, containing redactions pursuant to Exemption 6.  Pl.'s SMF ¶ 14; Def.'s SMF ¶ 14.  Plaintiff filed a timely administrative appeal on the interim production, challenging the redactions pursuant to Exemption 6, and FERC's General Counsel upheld the application of both exemptions.  Templeton Decl. ¶¶ 17–19.  On November 8, 2022, while this action was pending, FERC produced the remaining responsive records, which contained redactions pursuant to Exemption 6.  *Id.* ¶ 20; *see also* Pl.'s SMF ¶ 15; Def.'s SMF ¶ 15.  On March 1, 2023, when preparing the *Vaughn* Index in connection with this matter, FERC noticed that one attachment, containing call logs for Director Venuto, had been inadvertently omitted from the November 8, 2022, production and promptly produced this record.  Pl.'s SMF ¶ 16; Def.'s SMF ¶ 16; Templeton Decl. ¶ 21.

### C.   Procedural History

On September 12, 2022, plaintiff filed, in the Southern District of Texas, the instant FOIA action, alleging that FERC "fail[ed] to search for, process or produce certain responsive information . . . in violation of Defendant's lawful obligations" and seeking declaratory and injunctive relief against FERC.  Compl. ¶ 2.  With the parties' consent, the case was transferred to this Court on November 8, 2022.  *See* Case Transferred, ECF No. 11; Order to Transfer Case, ECF No. 10; Def.'s Mot. to Transfer Case, ECF No. 8; Pl.'s Notice of Consent to Transfer, ECF No. 9.  The parties soon apprised the Court that they tried and failed to resolve their disputes, *see* Joint Status Reps., ECF Nos. 14, 15, 18, and a scheduling order was entered in accord with the

parties' proposal, *see* Min. Order (Feb. 1, 2023).  Consistent with this scheduling order, FERC moved for summary judgment, and plaintiff filed no dispositive motion.

On January 8, 2024, while the instant summary judgment motion was pending, FERC informed the Court that previously redacted material in almost forty places throughout the Commissioners' calendars were released on December 15, 2023.  *See* Def.'s Notice of Suppl. Release ("Def.'s Notice") at 1–2, ECF No. 24.[1]  The withholdings in these almost forty locations are thus "no longer at issue in this litigation."  *Id.* at 2.  Accordingly, as to the Calendar FOIA Request, only three Exemption 5 redactions remain, all on Chairman Glick's calendar: (1) April 25 at 3:30 p.m.; (2) May 25 at 10:30 a.m.; and (3) May 26 at 2:00 p.m.  *Id.*  In addition, whereas FERC had originally redacted, pursuant to Exemption 6, five categories of information on the responsive calendar records, only the following four categories of redactions remain after FERC's release of "the names of lower-level staff": (1) personal events, such as gym trips and days children have off school; (2) travel information; (3) dial-in numbers or passcodes; and (4) names of interviewees.  *See id.*; Def.'s Reply, Second Decl. of Carolyn Templeton ("2d Templeton Decl.") ¶¶ 6–7, ECF No. 22-1.  As discussed below, these remaining disputed issues are resolved in this Memorandum Opinion.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law."  *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citation omitted); *see also* Fed. R. Civ. P. 56(a).  In FOIA cases, "courts must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure

---

[1]    FERC's Notice makes no mention of the productions responsive to the Call Log FOIA Request.

with 'reasonably specific detail'; and (2) is not substantially called into question by contrary record evidence or evidence of agency bad faith." *Schaerr v. Dep't of Justice*, 69 F.4th 924, 929 (D.C. Cir. 2023) (quoting *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007)); *see also Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (explaining that summary judgment may be granted based on agency affidavits "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith"). Most FOIA cases "can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"The fundamental principle animating FOIA is public access to government documents." *Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 156 (D.C. Cir. 2023) (citation omitted). To satisfy this aim of "providing more transparency into the workings of the government," an agency must demonstrate that it conducted an adequate search for records responsive to a FOIA request. *Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 714 (D.C. Cir. 2022). This demonstration "entails a 'show[ing] that [the agency] made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Id.* (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see also Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (explaining that the issue is "not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*" (emphasis in original)).

"Congress, however, did not pursue transparency at all costs" and "recognized that legitimate governmental and private interests could be harmed by release of certain types of information." *Citizens for Resp. Ethics in Wash. v. Dep't of Justice*, 45 F.4th 963, 967 (D.C. Cir. 2022) (citation omitted). To balance those competing interests, "FOIA exempts nine categories of documents from the government's otherwise broad duty of disclosure." *Waterman*, 61 F.4th at 156 (citation omitted). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

When an agency invokes an exemption to disclosure, district courts must "determine *de novo* whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). The statute "places the burden 'on the agency to sustain its action,' and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records." *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019) (first quoting 5 U.S.C. § 552(a)(4)(B); then quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)). The agency may sustain "this burden 'by submitting a *Vaughn* Index, along with affidavits from agency employees that describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Waterman*, 61 F.4th at 158 (quoting *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Jud. Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (quoting *Am. C.L. Union v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

### III.    DISCUSSION

With respect to the Calendar FOIA Request, plaintiff challenges the adequacy of FERC's

search for responsive records and its invocation of Exemptions 5 and 6.  With respect to the Call

Log FOIA Request, plaintiff challenges only FERC's invocation of Exemption 6.  The adequacy

of FERC's search will be addressed first, before turning to FERC's invocation of Exemptions 5

and 6.  A brief discussion of FERC's obligation to produce all reasonably segregable portions of

a record will follow, in light of a district court's mandate to make "an express finding on

segregability" before approving the withholding of exempt documents.  *Machado Amadis v.*

*Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (quoting *Morley v. Cent. Intel. Agency*, 508

F.3d 1108, 1123 (D.C. Cir. 2007)).

#### A.    Adequacy of FERC's Search

As a threshold issue, plaintiff challenges the sufficiency of FERC's search for responsive

records, arguing that FERC's declaration is inadequate because it relies impermissibly on

"inadmissible hearsay" and fails to identify "who at FERC allegedly conducted this search," or

to "explain why it believes no additional calendars were responsive to Plaintiff's request."  Pl.'s

Opp'n at 3–4; *see also* Pl.'s SMF ¶¶ 8–9 (objecting to statements made based on Templeton's

"understanding" as "inadmissible hearsay").  Plaintiff notably does not contend that additional

responsive records exist and takes issue with only the level of detail in FERC's declarations.

These complaints are unpersuasive and squarely foreclosed by binding precedent.[2]

---

[2]    For the same reason, plaintiff's same arguments raised in a different FOIA action involving the same parties seeking the Commissioners' calendars for a different period of time were rejected, when, like here, FERC's search resulted in only one calendar for each Commissioner, and FERC's search was found to be adequate.  *See Inst. for Energy Rsch. v. Fed. Energy Regul. Comm'n*, No. 22-cv-2114, 2023 WL 6121878, at *4–5 (D.D.C. Sept. 19, 2023).

At the outset, declarations in FOIA cases may include information relayed to a declarant by her subordinates without running afoul of Rule 56.  *See DiBacco v. Dep't of Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) (rejecting plaintiff's argument that information in declaration "not based on personal knowledge as required by Federal Rule of Civil Procedure 56" is inadmissible); *see also Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1358 (D.C. Cir. 1983) (accepting testimony of supervisor where "he consulted with his colleagues who had personal knowledge" of the relevant aspects of the search); *SafeCard Servs., Inc. v. Sec. & Exchange Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (finding that the agency affiant "in charge of coordinating the [agency's] search and recovery efforts . . . is the most appropriate person to provide a comprehensive affidavit" because an "agency employee responsible for supervising [the] search" may make such a declaration, even if in doing so she "necessarily relie[s] upon information provided by staff members who actually performed [the] search"); *Hainey v. Dep't of Interior*, 925 F. Supp. 2d 34, 41 (D.D.C. 2013) ("[I]t is well settled that 'FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties.'" (quoting *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009)).  Here, Templeton, who, in her role as Director of Strategic Operations and Special Projects in OEA, helps "oversee[] the processing of [FOIA] requests," attests that she is "familiar with the [p]laintiff's FOIA requests" and the information relayed in her declaration is "based on information provided to [her] by employees under [her] supervision, information provided by FERC staff in other offices, and information obtained by [her] in performance of [her] official duties."  Templeton Decl. ¶¶ 3, 5; *see also* Templeton Decl. ¶ 1 ("[T]he following statements are true and correct to the best of my knowledge and belief and that they are based upon my personal knowledge and on information supplied to me by employees under my

supervision and employees in other FERC offices."); 2d Templeton Decl. ¶ 2 (similar).  She thus has the requisite personal knowledge to attest to the adequacy of FERC's search for responsive records.

On the merits, FERC's search was adequate.  "Courts in this District have repeatedly rejected the argument that an agency's declaration must identify the individuals, by name, who conducted the searches." *Freedom Watch, Inc. v. Mueller*, 453 F. Supp. 3d 139, 149 (D.D.C. 2020) (cataloguing cases); *see also Harrison v. Fed. Bureau of Prisons*, 611 F. Supp. 2d 54, 65 (D.D.C. 2009) (rejecting, as "frivolous," plaintiff's argument that "the searches were adequate because they do not identify, by individual name, who was conducting the search," and noting that "if the information were recorded, it would itself be exempt from disclosure under exemption (b)(6) of the FOIA").  Although plaintiff is correct that agency declarations "must describe what records were searched, by whom," Pl.'s Opp'n at 3 (quoting *Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156, 163 (D.D.C. 2010)), plaintiff "ignores that the 'by whom' requirement permits 'an agency to rely on an affidavit of an agency employee responsible for supervising the search, even if that individual did not conduct the search herself.'" *Freedom Watch*, 453 F. Supp. 3d at 150 (alteration in original accepted) (quoting *Truesdale v. Dep't of Justice*, 803 F. Supp. 2d 44, 50 (D.D.C. 2011)).  Here, Templeton's declarations meet this standard.

Plaintiff's reliance on incomplete quotations from *Santos v. Drug Enforcement Agency*, 357 F. Supp. 2d 33 (D.D.C. 2004), *Weisberg v. Department of Justice*, 627 F.2d 365 (D.C. Cir. 1980), and *Steinberg v. Department of Justice*, 23 F.3d 548 (D.C. Cir. 1994), is not only unpersuasive but also misleading.  In *Santos*, a declaration that stated only that "[t]he records responsive to the plaintiff's FOIA / PA request are criminal investigatory records that have been

compiled for legitimate law enforcement investigations" was found inadequate.  357 F. Supp. 2d

at 37.  In *Weisberg*, a declaration that stated only that "a review of FBI files which would contain

information that Mr. Weisberg has requested" was conducted, and that "[t]he FBI files to the best

of my knowledge do not include any information requested by Mr. Weisberg other than the

information made available to him" was found insufficient.  627 F.2d at 370.  In *Steinberg*, a

declaration that stated only that "EOUSA contacted the [Boston] United States Attorney's Office

and was informed that no records responsive to the request had been located" was similarly

found lacking, where the question at issue was whether an adequate search had been conducted

by the Boston United States Attorney's Office.  23 F.3d at 552.  Plaintiff's attempt to read these

three cases to stand for the proposition that an affidavit is *per se* insufficient when it "fails to

'denote which files were searched or by whom,'" Pl.'s Opp'n at 3 (quoting *Weisberg*, 627 F.2d at

371), is not supported by a close read of these cases.

　　　In stark contrast to the declarations found to be inadequate in *Santos*, *Weisberg*, and

*Steinberg*, Templeton's declaration explains that when OEA received the Calendar FOIA

request, OEA staff searched the Offices of Chairman Glick and Commissioner Clements, and

FERC IT staff searched FERC records and produced two responsive Microsoft Outlook

calendars.  Templeton Decl. ¶¶ 8–9.  The basis of Templeton's belief that only two responsive

calendars exist—one each for Chairman Glick and Commissioner Clements—is then justified, in

detail.  She spoke to FERC's Office of General Counsel, which reached out to Chairman Glick

and Commissioner Clements's offices, "both during the initial processing of the request and

again during the appeal process," and confirmed that "only one official calendar is kept" for each

of Chairman Glick and Commissioner Clements.  Templeton Decl. ¶ 22.  Templeton also herself

"confirmed with staff for former Chairman Glick and Commissioner Clements" that "no other

calendars that would be responsive to the Plaintiff's request" existed.  *Id.*  The declaration finally outlines Templeton's efforts to ensure that all responsive calendar entries were produced to plaintiff.  Based on prior FOIA requests for the Commissioners' calendars, she knew that when calendar entries "did not fit within the space allotted" for a particular day, they were "replaced by the phrase 'more items.'"  *Id.*  For each of the days containing the phrase "more items," therefore, FERC staff "provided a separate printout" containing all the calendar entries on that day.  *Id.* ¶ 23.

FERC's search for responsive records is thus adequate.

### B.      FERC's Application of Exemption 5 to the Calendar Records

FERC withheld no information pursuant to Exemption 5 in the records responsive to the Call Log Request.  The Commissioners' calendars, in contrast, each contained numerous redactions pursuant to the deliberative process privilege.  *See* Def.'s Mot., Vaughn Index, ECF No. 19-4.  After the December 15, 2023, supplemental production, however, only three redactions pursuant to Exemption 5 remain.  These three redactions at issue "appear on Former Chairman Glick's Calendar records" at: (1) April 25 at 3:30 p.m.; (2) May 25 at 10:30 a.m.; and (3) May 26 at 2:00 p.m.  Def.'s Notice at 2; *see also* Def.'s Notice, Ex. 2 ("Glick Calendar"), ECF No. 24-2.  After a brief summary of the applicable legal standard, the three Exemption 5 redactions in Commissioner Glick's calendar are analyzed.

#### 1.      *Legal Standard for Exemption 5*

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  A record is exempt under Exemption 5 only if: (1) its "source" is a government agency; and (2) it "fall[s] within the ambit of a privilege against discovery under

judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Nat'l Inst. of Mil. Just. v. Dep't of Def.*, 512 F.3d 677, 682 (D.C. Cir. 2008); *Stolt-Nielsen Transp. Grp. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008). Here, the parties do not dispute that the "source" of the redacted calendar entries is a government agency, meeting the first Exemption 5 requirement. They dispute only whether the redacted calendar entries properly fall within the deliberative process privilege, which the second condition incorporates. *See Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015); Def.'s. Mem. at 13; Pl.'s Opp'n at 9–20.

The deliberative process privilege protects "open and frank discussion" among government officials to enhance the quality of agency decisions and thus allows federal agencies to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath Water Users Protective Ass'n*, 532 U.S. at 8–9; *see also U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (explaining that the deliberative process privilege "protect[s] agencies from being forced to operate in a fishbowl" and "encourage[s] candor, which improves agency decisionmaking" by "blunt[ing] the chilling effect that accompanies the prospect of disclosure" (citation omitted)). "To qualify for the deliberative process privilege, an intra-agency memorandum must be both pre-decisional and deliberative." *Abtew*, 808 F.3d at 898. In general**,** "[a] document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). "Deliberative," in turn, means that "the communication is intended to facilitate or assist development of the agency's

final position on the relevant issue." *Nat'l Sec. Archive v. Cent. Intel. Agency*, 752 F.3d 460, 463

(D.C. Cir. 2014) (citations omitted); *see also Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739

(D.C. Cir. 2017) ("Documents are predecisional if they are generated before the adoption of an

agency policy, and deliberative if they reflect the give-and-take of the consultative process."

(alteration in original accepted and citation omitted)).  The "key question" in evaluating material

withheld under the deliberative process privilege is "whether disclosure of the information would

discourage candid discussion within the agency."  *Access Reps. v. Dep't of Justice*, 926 F.2d

1192, 1195 (D.C. Cir. 1991) (citation omitted).

### 2.     *FERC's Exemption 5 Redactions on the Calendar Records*

Only three Exemption 5 redactions remain: (1) on April 25, 2022 at 3:30 PM, *see* Glick

Calendar at 2 ("[Redacted] (Microsoft Teams Meeting) – Rich Glick"); (2) on May 25, 2022 at

10:30 AM, *see id.* at 6 ("Briefing [redacted] – Rich Glick"); and (3) on May 26, 2022 at 2:00

PM, *see id.* ("[Redacted] Planning (Microsoft Teams meeting) – Rich Glick").  FERC explains

that the redacted information reveals "personnel-related policy proposals," Def.'s Status Rep.,

ECF No. 25, and requiring release of this information "would disclose deliberations on matters

pending before the Commission or policy proposals which were not then and may not now be

public," 2d Templeton Decl. ¶ 5.  For the reasons below, FERC's explanation of its invocation of

Exemption 5 to redact three words or phrases in three meeting titles is sufficient.

At the outset, plaintiff challenges FERC's *Vaughn* index for the Commissioners'

calendars for "collectively lump[ing] together . . . all of its Exemption 5 redactions, giving

insufficient detail about each redaction."  Pl.'s Opp'n at 4–5.  Now that only three redactions

remain, all of which have been withheld as personnel-related policy proposals pursuant to the deliberative process privilege, *see* Def.'s Status Rep., this argument is moot.[3]

On the merits, FERC has satisfied its burden of establishing that the deliberative process privilege applies. First, the withheld material is pre-decisional because it reflects policy proposals that were pending before FERC. Templeton Decl. ¶ 32; *see also* 2d Templeton Decl. ¶ 5 ("[T]he discussion and other work referenced in the calendar entries were being conducted at the indicated times because a decision had not yet been reached concerning the subject matter."). These policy proposals "were not then and may not now be public," and "some of the aforesaid policy proposals were never adopted." 2d Templeton Decl. ¶ 5. Put differently, although the withheld information "do[es] not reflect the outcome of the agency decisions themselves or detail the actions taken or to be taken, the redactions reflect meetings and topics of discussion among FERC's Commissioners with agency staff on pending matters before the agency," Def.'s Mem. at 9, and are thus pre-decisional, *see Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d at 739 ("Documents are predecisional if they are generated before the adoption of an agency policy.").

Plaintiff argues that the withheld information is not pre-decisional because FERC has failed to identify a "decision-making process" that "each redaction allegedly relates to." Pl.'s Opp'n at 8. FERC, however, has identified a specific decision: the decision of which personnel-related policy proposals to consider. According to FERC, the public is unaware that FERC was considering these policy proposals, and thus the information it seeks to withhold is which three policy proposals it considered and when. The cases cited by plaintiff in its opposition are thus distinguishable. *See* Pl.'s Opp'n at 9. In each of these cases, the agency withheld portions of

---

[3]       In any case, as explained in more detail below, a categorical approach to withholding under FOIA is permitted. Further, plaintiff's challenges to FERC's redaction of names of employees and the times of meetings is also moot, *see* Pl.'s Opp'n at 13–14, since the only information that remains redacted are three words or phrases that reveal topics of three meetings, *see* Def.'s Status Rep.

substantive memoranda, emails, or other documents on the basis that they discussed broad policy issues, such as "high tech policy issues" or "wilderness issues," descriptions that courts found insufficiently specific. *See, e.g.*, *ICM Registry, LLC v. Dep't of Com.*, No. 6-cv-949, 2007 WL 1020748, at *6 (D.D.C. Mar. 29, 2007) (concluding that the State Department's explanation that "the email and the memoranda contain judgments and analysis" concerning "high tech policy issues" was insufficient); *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 12 (D.D.C. 2004) (concluding that the Department of Interior's explanations that various documents were withheld on the basis that they discussed "wilderness issues" was insufficient); *Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004) (concluding that USPS's justification of its withholding of two pages on the basis that they are "related to environmental testing and safety measures" was insufficient); *Elec. Frontier Found. v. Dep't of Justice*, 826 F. Supp. 2d 157, 168–70 (D.D.C. 2011) (concluding that the Department of Justice's explanation that it withheld three documents discussing issues raised "on HLCG information sharing principles" was insufficient). Moreover, in these cases, the withheld information at issue was substantive information containing details of the agency's deliberations. Here, in contrast, the only information FERC seeks to withhold is three words or phrases generally describing the topics of discussion at three meetings. Put differently, in the cases plaintiff cites, the withheld information was detailed information about *how* the agency considered specific decisions and thus more specificity about the subject matter at issue was found to be warranted, whereas, here, the information FERC seeks to withhold is information about *whether* it considered a particular personnel-related policy proposal and, if so, when. Requiring FERC to identify a more specific decision, *i.e.*, the specific policy proposal at issue, as plaintiff requests, would be the same as requiring FERC to remove its Exemption 5 redactions, given the generality of the redacted

phrases. *See King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987) (explaining that an agency affidavit must "disclos[e] as much information as possible without thwarting the exemption's purpose").[4]

Second, the withheld information—the titles of three meetings, which reflect the policy proposals discussed at these meetings—is deliberative.  A topic of discussion "can itself disclose sensitive issues, and . . . may include recommendations or express opinions."  *Am. Oversight, Inc. v. Dep't of Health & Hum. Servs.*, No. 17-cv-827, 2022 WL 1719001, at *18 (D.D.C. May 27, 2022).  Here, FERC has not withheld full calendar entries.  Rather, all reasonably segregable information has been released, including the date and time of the meetings, as well as the other words in the title of the meeting that do not bear on specific policy proposals.  *See* Glick Calendar at 2 ("[Redacted] (Microsoft Teams Meeting) – Rich Glick"), 6 ("Briefing [redacted] – Rich Glick"; "[Redacted] Planning (Microsoft Teams meeting) – Rich Glick").  Releasing the redacted words, therefore, would reveal not only the topic of discussion, but also the timing of FERC's internal deliberations about specific unadopted policy proposals, the fact that these proposals made it all the way to the Commissioner's desk for "briefing[s]" and "planning," and thus information about FERC's priorities.  *See* 2d Templeton Decl. ¶ 5 (explaining that releasing the withheld information would "reveal the specific mechanics and timing of internal deliberations"); Def.'s Reply at 7 (explaining that releasing the withheld information "would cause confusion to the public as what is perceived to be a priority may not be what is in actuality" (citing Templeton Decl. ¶ 31)).

---

[4]        Plaintiff offers no support for its argument that "what policies an agency is considering" is already "common knowledge thanks to being the subject of, e.g., federal register notices, web pages, press releases and other public pronouncements."  Pl.'s Opp'n at 9.  To the contrary, FERC states that the three policy proposals were pending before FERC and not known to the public.  *See* 2d Templeton Decl. ¶ 5.

Plaintiff, in turn, argues that topics of a meeting are "peripheral to actual policy formation" because they are not "[r]ecommendations from subordinates to superiors," but rather "records of activities engaged in by superiors."  Pl.'s Opp'n at 9–10 (citation omitted).  Plaintiff, however, offers a myopic view of the privilege, which "protect[s] the deliberative process itself, not merely documents containing deliberative material."  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *see also Petrol. Info. Corp.*, 976 F.2d at 1435 ("The deliberative process privilege, we underscore, is centrally concerned with protecting the process by which *policy* is formulated.").  Releasing the topics of these three meetings would reveal the specific and currently unknown policy proposals that FERC was considering potentially implementing on three specific dates and would thus expose crucial information about FERC's deliberative process.

Plaintiff further argues that even if the deliberative process privilege applied, FERC waived such privilege by "shar[ing] communications with private citizens or non-federal employees."  Pl.'s Opp'n at 10.  This argument, which is based on pure speculation, is easily dispatched.  FERC has repeatedly stated that the calendar entries at issue reflect meetings that occurred between FERC commissioners and staff.  *See* Def.'s Reply at 5–6 ("The topics were not discussed with outside parties. . . .  Contrary to Plaintiff's assertion, the calendars clearly reflect that these meetings occurred between FERC commissioners and staff, which makes them an intra-agency matter."); Templeton Decl. ¶ 34 ("Meetings with the White House or external organizations were not withheld under Exemption 5.").  Plaintiff offers nothing, except speculation and conclusory allegations, to suggest that FERC's declaration is wrong.  *See SafeCard Servs., Inc.*, 926 F.2d at 1200 ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims.'").  As FERC succinctly puts it:

"simply saying that FERC officials met with outside officials on those withheld topics and, therefore, waived privilege, does not make it so."  Def.'s Reply at 6.

Third and finally, FERC has adequately shown that it reasonably foresees that disclosure of this information would harm an interest protected by Exemption 5: the free and frank communication between agency employees.  *See Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021); *see also* 5 U.S.C. § 552(a)(8)(A)(i)(I) ("An agency shall withhold information . . . only if the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption.").  Plaintiff contends that FERC's foreseeable harm analysis is "conclusory," Pl.'s Opp'n at 13, but it is not.  As FERC explains, "the disclosure of calendar entries would create a disincentive in the future for FERC employees to maintain detailed and substantive calendar entries that are necessary to enable leaders at large complex organizations to prepare for and address the many discrete issues they confront each day."  Templeton Decl. ¶ 33.  "If FERC staff did not have as detailed and substantive calendars, they would not be as adequately prepared for future meetings, which would harm decision-making" and "significantly inhibit both the day-to-day operations of the agency, as well as its ability to make appropriately considered and deliberated decisions to benefit the public and accomplish the agency's mission."  *Id.*; *see also Am. Oversight*, 2022 WL 1719001, at *18 (concluding that Exemption 5 applies to the titles of meetings in a government official's calendar, and acknowledging that revealing "the titles or body of a calendar entry . . . could certainly chill future government employees from engaging in frank discussions, both by discouraging meetings on sensitive topics, or from describing those topics in any calendar entries (and thereby preventing advance preparation))" (alterations in original accepted and citation omitted)); *Klamath Water Users Protective Ass'n*, 532 U.S. at 8–9 ("The deliberative process

privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." (citations omitted)).  FERC's explanation "identif[ies] specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect[s] the harms in [a] meaningful way to the information withheld" and is thus adequate.  *Ctr. for Investigative Reporting v. Customs & Border Protect.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (citations omitted).

### C.    FERC's Application of Exemption 6 to Both FOIA Requests at Issue

FERC has invoked Exemption 6 to justify withholdings in its productions in response to both the Calendar FOIA Request and the Call Log FOIA Request.  Following a brief summary of the applicable legal standard, the Exemption 6 redactions in the Calendar FOIA Request and Call Log FOIA Request, respectively, are analyzed.

### 1.    *Legal Standard for Exemption 6*

Exemption 6 allows an agency to withhold from disclosure certain "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The purpose of the exemption is "to protect the privacy of individuals identified in certain agency records," *Am. C.L. Union v. United States*, 655 F.3d 1, 6 (D.C. Cir. 2011), by exempting "disclosures that would constitute an invasion of privacy," *Dep't of Justice v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989).

The Exemption 6 analysis proceeds in two steps.  First, a court determines whether the records are "personnel," "medical," or "similar files."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be

identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152–53 (D.C. Cir. 2006) ("We have . . . read [Exemption 6] to exempt not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy.").

Second, a court "determine[s] whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (quoting *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009)). "If a substantial privacy interest is at stake, then the court must 'balance' the individual's right of privacy against the public interest in disclosure." *Id.* (quoting *Horowitz v. Peace Corps.*, 428 F.3d 271, 278 (D.C. Cir. 2005)); *see also Lepelletier*, 164 F.3d at 47 (explaining that the "privacy interest in non-disclosure" must be weighed against "the public interest in the release of the records" (citation omitted)). "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46 (quoting *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994)). "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993).

### 2. *FERC's Exemption 6 Redactions on the Calendar Records*

FERC originally redacted, pursuant to Exemption 6, five categories of information on

responsive calendar records: (1) personal events, such as gym trips and days children have off

school; (2) travel information; (3) dial-in numbers or passcodes; (4) staff names; and (5) names

of interviewees.  2d Templeton Decl. ¶¶ 6–7.  Plaintiff does not appear to challenge FERC's

withholding of personal and travel information, or dial-in numbers and passcodes.  *See generally*

Pl.'s Opp'n (making no mention of personal and travel information or dial-in numbers, and

acknowledging that there is "no public interest" in "internal agency passcode[s]," *id.* at 7); *see*

*also Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an

opposition to a motion and therein addresses only some of the movant's arguments, the court

may treat the unaddressed arguments as conceded.  Such a concession acts as waiver."  (citations

omitted)).  Rather, plaintiff challenges only FERC's withholding of "the names of government

employees and private citizens" and the names of interviewees for the OER Director position.

*See* Pl.'s Opp'n at 21–22.[5]  In addition, after the December 15, 2023, supplemental production,

"[a]ll Exemption 6 redactions made solely on the grounds that the information includes the

names of lower-level staff have been released," Def.'s Notice at 2, and thus plaintiff's objections

on this basis are moot, *see* Pl.'s Opp'n at 21.  With these developments, the only issues that

---

[5]      Plaintiff also challenges the withholding of phone numbers and email addresses of FERC staff, *see* Pl.'s
Opp'n at 23, 25, but none of FERC's filings, including its *Vaughn* index or declarations, state that phone numbers
and email addresses of FERC staff were withheld.  References in the Templeton Declaration to "phone numbers" in
connection with the Calendar FOIA Request, is to dial-in numbers.  *See* 2d Templeton Decl. ¶ 6(b).  Insofar as
plaintiff intended to challenge the withholding of dial-in numbers, the Court agrees with FERC that "[r]eleasing this
information would be of no public value and would compromise the security of conference lines allowing
eavesdroppers or 'zoombombers,' uninvited persons joining a phone call with disruptive intent, to compromise
regular meeting lines."  *Id.*; *see also Inst. for Energy Rsch.*, 2023 WL 6121878, at *12 (recognizing "obvious[ly]"
private nature of passcodes, "with concomitant obvious risks to privacy by disclosure and even breaches of
telecommunications security as to the passcodes associated with call numbers," and concluding that Exemption 6
was properly applied to these withholdings).

remain are FERC's withholding of the names of private citizens and unsuccessful candidates for the OER Director position, which are addressed *seriatim*.

At the outset, plaintiff contends that FERC's *Vaughn* index is insufficiently detailed because it "lumps together all the many redactions to the calendars based on Exemption 6 into a laundry list of types of redacted material, rather than . . . describing each redaction."  Pl.'s Opp'n at 4.  "[T]here is," however, "'no fixed rule' establishing what [an agency] affidavit must look like," *Citizens for Resp. & Ethics in Wash. v. Dep't of Justice ("CREW I")*, 746 F.3d 1082, 1088 (D.C. Cir. 2014), and a categorical approach to withholding is permitted under FOIA "so long as [the agency's] definitions of [the] relevant categories are sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied," *Prison Legal News*, 787 F.3d at 1149–50.  Here, FERC grouped its Exemption 6 redactions into five categories— (1) personal events, such as gym trips and days children have off school; (2) travel information; (3) dial-in numbers or passcodes; (4) staff names; and (5) names of interviewees—offered specific "privacy interests [that] would be negatively affected by disclosure . . . weighed against the public interest in disclosure," and provided a table of which redactions on which days fall into each category.  *See* 2d Templeton Decl. ¶¶ 6–7.  These categories are "sufficiently distinct to allow a court to determine whether" Exemption 6 is "properly applied," and, for the reasons explained below, "the range of circumstances included in [each] category characteristically supports an inference that the statutory requirements for [the] exemption are satisfied."  *CREW I*, 746 F.3d at 1088–89 (alterations in original accepted and citations omitted); *see also Reps. Comm.*, 489 U.S. at 776 ("[C]ategorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction.").

Turning to the merits, the public release of names may "create a palpable threat to privacy." *Jud. Watch, Inc. v. Food & Drug. Admin*., 449 F.3d at 152 (alteration in original accepted and citation omitted).  Nonetheless, Exemption 6 "does not categorically exempt individuals' identities . . . because the 'privacy interest at stake may vary depending on the context in which it is asserted." *Id.* (quoting *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996)).  To determine whether names are appropriately withheld, therefore, "the individual's right to privacy" must be balanced against "the basic purpose of the Freedom of Information Act, which is to open agency action to the light of public scrutiny." *Id.* (quoting *Horowitz*, 428 F.3d at 278).

With respect to the names of private citizens, to the extent FERC has redacted the names of "personal trainers, family members, babysitters, and other non-FERC persons" whose relationships with the Commissioners are entirely private in nature, *see* 2d Templeton ¶ 6(c), this information was properly withheld because revealing this entirely private information does not further FOIA's purpose of allowing scrutiny of agency action, *see Beck*, 997 F.3d at 1494 (explaining when there is no public interest at all, the court "need not linger over the balance; something outweighs nothing every time"); *see, e.g.*, *Inst. for Energy Rsch. v. Fed. Energy Regul. Comm'n*, No. 22-cv-2114, 2023 WL 6121878, at *13 (D.D.C. Sept. 19, 2023) (allowing withholding of similar private information "[n]otwithstanding the brevity of FERC's explanations in the OEA Declaration and *Vaughn* Index"); *Cornucopia Inst. v. Dep't of Agric.*, 282 F. Supp. 3d 150, 165 (D.D.C. 2017) (upholding defendant's Exemption 6 redactions of "identifying information of private individuals" because plaintiff had not "identified a public interest sufficient to outweigh the privacy interest of the individuals"); *Surgery v. Env't Prot.*

*Agency*, No. 18-cv-654, 2021 WL 5758880, at *6–7 (D.D.C. Dec. 3, 2021) (finding that details

about an agency administrator's family vacation fell within Exemption 6).

FERC, however, appears to have withheld the name of at least one lobbyist under the

guise of redacting the name of a private citizen, making no attempt to justify this withholding,

with FERC's memorandum in support of its motion for summary judgment, *Vaughn* index, and

both Templeton Declarations making no mention of application of Exemption 6 to withhold the

name of a lobbyist.  In fact, in reply, FERC summarily dismisses plaintiff's contention that

members of the public "may be lobbyists secretly meeting with the Commissioners."  Def.'s

Reply at 11 (citing Pl.'s Opp'n at 21); *see also id.* at 12 ("[T]he names of political, legal, and

other special advisers within the Commissioners' offices were not withheld under Exemption

6.").  While the Court might have been inclined to agree based on the FERC's *Vaughn* index and

declarations, FERC filed, on June 5, 2023, an errata to its reply, which errata had two

attachments: Exhibit A, the calendars responsive to the Calendar FOIA Request; and Exhibit B,

the call logs responsive to the Call Log Request.  *See* Def.'s Errata Concerning Reply Mem.

Supp. Summ. J., ECF No. 23.  Exhibit A, at page 14, includes the entry on Chairman Glick's

calendar, at 12:30 p.m. on May 5, 2022, stating "Lunch with [redacted]."  Def.'s Errata, Ex. A, at

14.  Next to the redaction, an individual with the username "khbgc13" left the comment "should

definitely not have withheld lunch with a lobbyist for an energy company here."  *Id.*  This entry,

however, remains redacted after FERC's December 15, 2023 supplemental production.  *See*

Glick Calendar at 3.

As FERC appears to recognize, lobbyists differ significantly from "other non-FERC

persons" whose relationships with the Commissioners are entirely private in nature, 2d

Templeton ¶ 6(c), because lobbyists work to influence the actions, policies, and decisions of

government officials.  *See id.* ¶ 8 (releasing the names of two individuals with "professional interests in Commission policy" who had lunch with the Commissioners, even though the "lunches were of a personal nature").  Put differently, while lobbyists have some privacy interest in their identities, the countervailing public interest in the identities of the individuals who contacted the government to influence government action and policies is significant.  *See Elec. Frontier Found. v. Off. of Dir. of Nat'l Intel.*, 639 F.3d 876, 886 (9th Cir. 2010) (concluding that Exemption 6 did not justify withholding the names of corporate lobbyists petitioning the government on behalf of their clients, in light of the "clear public interest in public knowledge of the methods through which well-connected corporate lobbyists wield their influence"), *abrogated on other grounds by Animal Legal Def. Fund v. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 305–06 (D.D.C. 2007) (concluding that Exemption 6 did not justify withholding the names of citizens "who submitted unsolicited email comments . . . concerning the proposed change of the video on display at the Lincoln Memorial" because "the public interest in knowing who" convinced the agency "to change the video outweighs any privacy interest in one's name"); *All. for Wild Rockies v. Dep't of Interior*, 53 F. Supp. 2d 32, 37 (D.D.C. 1999) (concluding that Exemption 6 did not justify withholding the names of individuals who commented on proposed rules because the "public has much to learn about defendants' rulemaking process," such as whose comments "defendants give greater weight to").  Given that FERC has provided no explanation for the redaction, FERC's withholding of the name of a lobbyist is improper and this name must be released.

 With respect to the names of unsuccessful candidates for the OER Director position, these candidates have a privacy interest in their identities.  *See, e.g.*, *Pinson v. Dep't of Justice*,

202 F. Supp. 3d 86, 114 (D.D.C. 2016) ("[T]he individual has a considerable privacy interest in avoiding having his or her non-selection disclosed to the public, a disclosure which would likely cause embarrassment.").  Plaintiff argues that "[l]earning the name of these applicants, and researching the policies they support, could help predict future FERC policymaking," Pl.'s Opp'n at 22, but given that these applicants have been rejected for the position, how their identities would reveal anything about "future FERC policymaking," current agency policies, or the workings of FERC is entirely unclear.  *See, e.g.*, *Pinson*, 202 F. Supp. 3d at 114 ("Although the public has an interest in evaluating the competence of individuals who are appointed as government employees, in the case of individuals who are not ultimately selected, the privacy interest outweighs public interest in disclosure."); *Neary v. Fed. Deposit Ins. Corp.*, 104 F. Supp. 3d 52, 57–60 (D.D.C. 2015) (permitting withholding of candidates interviewed for a specific FDIC employee program).[6]  FERC has thus adequately explained its withholding of the names of unsuccessful candidates for the OER Director position.

In sum, FERC is entitled to summary judgment with respect to all its Exemption 6 withholdings, except as to the name of the lobbyist whom FERC appears to attempt to categorize as a "private citizen[]," which name must be released.

### 3.     *FERC's Exemption 6 Redactions on the Call Logs*

As to the Call Log FOIA Request, FERC invoked Exemption 6 to justify redacting the Commissioners' individual account numbers, as well as "[p]ersonal cellular phone numbers" and "[FERC] staff's direct phone numbers."  Templeton Decl. ¶ 38.  FERC later clarified that it did not intentionally withhold these categories of information or "the phone numbers of any specific person or persons," but rather withheld all phone numbers not identifiable through a Google

---

[6]     Plaintiff also argues that disclosure of the identity of applicants would be "interesting," Pl.'s Opp'n at 22, but whether information is "interesting" has no role in the FOIA analysis.

search.  *See* 2d Templeton Decl. ¶ 12 ("After the Verizon phone bills were retrieved by FERC's

Office of the Chief Information Officer, a search on Google was conducted . . . for each number

appearing on those records.  Where FERC staff could verify that a phone number was publicly

available through that Google search, such as the number for a business, governmental office, or

other public entity, it was released.  Any number which could not be so verified was withheld.").

To be clear, the only information in these records that could be converted into identifying

information are phone numbers; the names of individuals or entities associated with the phone

numbers are not contained in the call logs.

Plaintiff objects to FERC's redactions only to the extent that "staff phone numbers" were

withheld, arguing that "[t]here is no privacy interest in such phone numbers."  Pl.'s Opp'n at 24.

Alleging that the Commissioners and Director Venuto "were assigned FERC mobile phones" but

often "used their personal phones instead," plaintiff contends that the countervailing public

interest in knowing that "the official's contact information was not in fact its FERC-assigned

phone," is "great."  *Id.*  It is unclear, however, why knowing whether a government official used

her government or personal phone would advance the public interest, or why the redacted

information—phone numbers associated with inbound and outbound calls made and received by

the Commissioners and Director Venuto—would shed light on this alleged public interest.

FERC has properly redacted the telephone numbers of unknown individuals.  To be clear,

FERC did not redact certain phone numbers because they were the phone numbers of members

of FERC staff.  Rather, FERC looked up every phone number on the responsive Verizon phone

bills and withheld all phone numbers it could not identify through a Google search.  "In all

likelihood, these calls include not only organizations and entities with whom [the Commissioners

and Director Venuto] regularly deal in their professional capacity, but a host of other private

persons." *Nat'l Right to Work Legal Def. & Educ. Found.*, 828 F. Supp. 2d 183, 192 (D.D.C.

2011); *see also id.* at 193 (acknowledging that if plaintiff wanted to know if the public officials

"corresponded by phone with unions or other organizations with which they are allegedly

associated, it could have limited its requests to specific telephone numbers associated with those

entities," noting that plaintiff "did not do so").  Disclosure of these phone numbers could

"subject the individuals to annoyance, embarrassment, and harassment in the conduct of their

official and private lives."  *Id.* at 192.  This privacy interest outweighs any conceivable public

interest.  *See, e.g.*, *id.* (permitting withholding of phone numbers of unknown individuals on call

logs pursuant to Exemption 6); *United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49, 65–66

(D.D.C. 2009) (finding that requiring the release of the name and cellphone number of an

"unknown individual" would be a "clearly unwarranted invasion of personal privacy," thereby

justifying withholding under Exemption 6); *People for the Am. Way Found.*, 503 F. Supp. 2d at

306–07 (requiring disclosure of names of individuals who voluntarily submitted comments to

agency in response to notice of proposed policy decision to agency, but nonetheless permitting

non-disclosure of phone numbers and personal addresses because "[g]enerally, there is a stronger

case to be made for the applicability of Exemption 6 to phone numbers and addresses").  The

public interest is not furthered "by disclosure of information about private citizens that is

accumulated in various governmental files but that reveals little or nothing about an agency's

own conduct."  *Reps. Comm.*, 489 U.S. at 773.

### D.    Segregability

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any

person requesting such record after deletion of the portions which are exempt" from disclosure.

5 U.S.C. § 552(b).  Producing segregable information is essential for an agency's FOIA

compliance, and "district courts cannot approve withholding exempt documents 'without making an express finding on segregability.'" *Machado Amadis*, 971 F.3d at 371 (quoting *Morley*, 508 F.3d at 1123); *see also Stolt-Nielsen Transp. Grp.*, 534 F.3d at 734 ("[B]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." (internal quotation marks and citation omitted)); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (same).

In evaluating segregability, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman*, 494 F.3d at 1117. Even under that presumption, "the agency must provide a 'detailed justification' for [the exempt material's] non-segregability," but need not "provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)). Affidavits attesting to the agency's "line-by-line review of each document withheld in full" and the agency's determination "that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions," in conjunction with a *Vaughn* index describing the withheld record, suffice. *Id.* (internal quotation marks omitted); *see also Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination").[7]

---

[7]    Plaintiff does not meaningfully challenge segregability, merely stating that FERC has not "shown that it produced all reasonably segregable records" when "an agency has a duty to segregate and release nonexempt information," but making no attempt to support the contention that FERC has not produced all reasonably segregable records, leaving this task to the Court, which "has an affirmative duty to consider the segregability issue *sua sponte*." Pl.'s Opp'n at 1–3 (citations omitted).

To this end, FERC has averred that it "performed a line-by-line and page-by-page review to identify information exempt from disclosure" and released "[a]ll information not exempt[] from disclosure" pursuant to Exemptions 5 and 6, and that "no further non-exempt information . . . can be reasonably segregated and released without revealing exempt information." Templeton Decl. ¶¶ 41–43. Coupled with a review of FERC's productions, *see* Glick Calendar; Def.'s Notice, Ex. 1 ("Clements Calendar"), ECF No. 24-1, FERC's declarations and *Vaughn* Index are sufficient to establish the non-segregability of the disputed exempt records.

## IV.   CONCLUSION

For the foregoing reasons, FERC's motion for summary judgment is granted in part and denied in part. Specifically, FERC is granted summary judgment with respect to the adequacy of its search, its Exemption 5 redactions, and its Exemption 6 redactions in the Call Log FOIA Request. FERC is also granted summary judgment with respect to its Exemption 6 redactions in the Calendar FOIA Request, except as to the name of the lobbyist who met with Chairman Glick at 12:30 p.m. on May 5, 2022, which FERC concedes, in a comment bubble, "should definitely not have [been] withheld." Def.'s Errata, Ex. A, at 14. FERC is directed to release the name of the lobbyist who met with Chairman Glick at 12:30 p.m. on May 5, 2022. With this resolution of the outstanding disputes between the parties as to both the Call Log FOIA Request and Calendar FOIA Request, this case will be closed.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  February 12, 2024

_____
**BERYL A. HOWELL**
United States District Judge